UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC LAMONT THOMAS,

     Petitioner,                          Case No. 19-cv-12775
                                           Hon. Matthew F. Leitman

v.

S.L. BURT,

     Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) GRANTING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS*

Petitioner Eric Lamont Thomas is a state inmate in the custody of the Michigan Department of Corrections. In 2014, Thomas pleaded no contest to a charge of first-degree criminal sexual conduct in the Wayne County Circuit Court. On September 23, 2019, Thomas filed a petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.) For the reasons explained below, the Court concludes that Thomas is not entitled to habeas relief on any of his claims. The Court therefore **DENIES** his petition. However, the Court will grant Thomas a Certificate of Appealability and grant him leave to appeal *in forma pauperis*.

1

# I

## A

The charges against Thomas arose from a home invasion and rape that occurred in 1996. Nearly two decades later, in 2014, DNA analysis led prosecutors to charge Thomas and one co-defendant as the perpetrators. Thomas was originally charged with kidnapping, armed robbery, first-degree criminal sexual conduct, first-degree home invasion, and commission of a felony with a firearm. (*See* Reg. of Actions, ECF No. 8-1, PageID.186.) All of the charges other than the first-degree criminal sexual conduct charge were dismissed before trial on the ground that they were barred by the statute of limitations and/or on the basis that the statute underlying the charge did not exist at the time of the alleged offenses. (*See* 9/5/2014 Tr., ECF No. 8-3, PageID.200-204.)

## B

At a September 5, 2014, pre-trial proceeding, Thomas' trial counsel indicated on the record that the prosecutor had made a plea offer under which Thomas would be sentenced to "eight to twenty-five" years. (*Id.*, PageID.197.) Upon questioning from defense counsel, Thomas stated on the record that he was "not interested" in that offer. (*Id.*, PageID.197–198.)

The trial court then "follow[ed] up" on the offer by inquiring about Thomas' potential sentencing exposure. (*Id.*, PageID.198.) The prosecutor said that the

sentencing guidelines range for Thomas, if convicted at trial, would call for a minimum sentence that fell within one of two possible ranges: "either ninety-six to two hundred and forty or one-twenty to three hundred" months.[1] (*Id.*)   The prosecutor then said that if he prevailed at trial, he would "ask[] for" a minimum sentence "towards the top end of the guidelines" and would be "looking for a minimum [sentence] of twenty" years. (*Id.*, PageID.199.)   The trial court then clarified again that the plea offer called for a minimum term of 8 years and a maximum term of 25 years. (*See id.*)   At that point, the trial court asked Thomas if he "underst[oo]d that?" (*Id.*)   Thomas responded "[y]es, I do." (*Id.*, PageID.200.)   The trial court then asked if Thomas "want[ed] an opportunity [...] to speak with

---

[1] Unlike federal courts – which impose a sentence for a fixed period of time – "a sentence imposed in Michigan is [almost always] an indeterminate sentence" that includes both a minimum and maximum. *People v. Drohan*, 715 N.W.2d 778, 790 (Mich. 2006), *overruled in part on other grounds*, *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).   Michigan's Sentencing Guidelines provide a range for determining a defendant's *minimum sentence. See People v. Babcock*, 666 N.W.2d 231, 256 n.7 (Mich. 2003). The guidelines play no role in determining a defendant's *maximum sentence*. *See id.* The maximum sentence is set by statute. *See Drohan*, 715 N.W.2d at 790.   At the time of Thomas' sentencing, Michigan's sentencing guidelines were "mandatory," meaning that trial courts were required to impose a minimum sentence within the guidelines range unless they found "substantial and compelling reasons" to depart from the guidelines. Mich. Comp. Laws § 769.343(3); *Babcock*, 666 N.W.2d at 236.   Once a defendant serves his minimum sentence, he becomes eligible for parole, and the Michigan Parole Board determines whether to release him prior to the expiration of his maximum term. *See* Mich. Comp. Laws § 791.234(1).

[his] attorney" about the plea offer. (*Id.*)  Thomas responded "no" and said that he was "reject[ing]" the plea offer. (*Id.*)

## C

Thomas' trial on the first-degree criminal sexual conduct charge began on September 16, 2014.  During jury selection that morning, Thomas' lawyer learned that Thomas' "co-defendant ha[d] just pled[.]" (*See* 9/16/2014 Tr., ECF No. 8-4, PageID.270.)  Thomas' lawyer told the court that he had "just been given a statement made by [Thomas'] co-defendant" regarding the allegations against Thomas. (*Id.*, PageID.269–270.)  Thomas' counsel further noted that the co-defendant was "going to testify during [Thomas'] trial," and that he (Thomas' lawyer) did not have sufficient time before trial to have the co-defendant interviewed by an investigator. (*Id.*, PageID.270–271.)  Thomas' lawyer therefore moved for a mistrial, or in the alternative, to preclude the co-defendant from testifying at Thomas' trial. (*See id.*, PageID.272.)

The court then heard argument from the prosecutor.  The prosecutor opposed Thomas' motion and asked instead to add the co-defendant as a witness.  The prosecutor reasoned that any timeliness issues were due to Thomas' lawyer's delay in filing the requisite notice under Michigan's rape shield law for evidence that he (Thomas' lawyer) intended to produce at trial. (*See id.*, PageID.274.)  The prosecutor said that this late filing led the prosecution to conduct a "tremendous investigation"

which, apparently, led to the co-defendant's plea. (*Id.*; *see also id.*, PageID.276 (explaining to the court that Thomas' counsel's "notice on th[e] rape shield issue […] triggered all of this.").)   The prosecutor then explained that (1) Thomas' co-defendant had not in fact made a statement; (2) that what was produced to Thomas' lawyer was not a statement but was instead the interviewing officer's notes of his interactions with the co-defendant; (3) that as part of the prosecution's agreement with the co-defendant, the prosecution "would not be able to introduce any" part of what the co-defendant said against the co-defendant; (4) pursuant to that agreement, the prosecution was not permitted to share the notes with Thomas' counsel until the co-defendant pleaded guilty; and (5) that, in any event, the co-defendant's statements to investigators about Thomas were not "exculpatory," and therefore there was no duty to produce the notes to Thomas. (*Id.*, PageID.275-276.)   Finally, the prosecutor argued that there was no undue delay in adding the co-defendant as a witness because the co-defendant was not "available" as a witness until he pleaded guilty, which did not occur until shortly before Thomas' trial started. (*See id.*, PageID.277.)

In reply, Thomas' lawyer argued that the prosecutor had, in effect, admitted to several violations.   First, he argued that the prosecution had not turned over any results of its "investigation," which Thomas' lawyer claimed was "a *Brady*[2] violation." (*Id.*, PageID.278.)   Second, Thomas' lawyer argued that it was improper

---

[2] *See Brady v. Maryland*, 373 U.S. 83 (1963).

for the prosecution to "have a secret agreement" with the co-defendant "to keep evidence away from" Thomas and his counsel, regardless of whether the prosecutor thought the evidence was or was not "exculpatory." (*Id.*, PageID.279.)  Moreover, Thomas' lawyer indicated that any timeliness issue related to the rape shield law was due to prior counsel and should not be used to prejudice Thomas. (*See id.*, PageID.280.)  Finally, Thomas' counsel again requested a mistrial and a new trial date to permit him to follow-up on the co-defendant's statement. (*See id.*, PageID.279–280.)

After the lawyers concluded argument, the trial court ruled that it would "allow the [co-defendant] to be added" to the prosecution's witness list and that it would "deny [Thomas'] request for a mistrial[.]" (*Id.*, PageID.281.)  The court then took a short recess.

## D

When the case was recalled after the recess, Thomas' trial counsel informed the court that Thomas was "going to offer a plea of no contest to the remaining count" of first-degree criminal sexual conduct. (*Id.*, PageID.283.)  Counsel stated that the "[b]asis for the [] no contest plea is civil liability." (*Id.*)

Thomas was then placed under oath. (*See id.*, PageID.284.)  Thomas affirmed that he was "satisfied with the representation of [his] attorney" and that his "attorney [had] done what he should be doing and ha[d] been acting in [Thomas'] best

interest." (*Id.*, PageID.284–285.)  Thomas also confirmed that he wished to plead no

contest to the first-degree criminal sexual conduct charge. (*See id.*, PageID.285.)

The court then explained that "for purposes of this Court the no contest plea is the

same as a guilty plea[.]" (*Id.*)  Thomas confirmed that he understood that. (*See id.*)

Next, the trial court noted the parties had submitted "a document entitled

Pretrial Settlement Offer and Notice of Acceptance" (the "Plea Form") (*Id.*)  The

Plea Form listed one count – "CSC 1" – *i.e.*, criminal sexual conduct in the first

degree. (Plea Form, ECF No. 26-2, PageID.883.)  It also listed the "STATUTORY

MAXIMUM PENALTY" as "Life." (*Id.*)  The box for "[n]o charge reduction" was

marked with an "X." (*Id.*)  And the box for "[p]eople agree to withdraw notice to

enhance sentence" was also marked with an "X."[3] (*Id.*)  Finally, the boxes for

"Sentence Agreement," "Agree to Guideline Sentence," and "Sentence

Recommendation," were all left blank. (*Id.*)  At the bottom, the Plea Form set forth

a "NOTICE OF ACCEPTANCE."  That notice provided as follows:

> I HERBY ACCEPT THE ABOVE PRETRIAL
> SETTLEMENT OFFER AND WAIVE THE
> FOLLOWING RIGHTS:

---

[3] The prosecutor explained to the state trial court that this aspect of the Plea Form actually "was not part of the agreement." (9/16/2014 Tr., ECF No. 8-4, PageID.292.) Instead, this marking indicated that the habitual offender enhancement was withdrawn due to statute of limitations issues. (*See id.*, PageID.292–293.)

l. THE RIGHT TO A JURY TRIAL OR TRIAL BY THE COURT WITH THE PROSECUTOR'S CONSENT.

2. THE RIGHT TO BE PRESUMED INNOCENT UNLESS PROVEN GUILTY BEYOND A REASONABLE DOUBT.

3. THE RIGHT TO CONFRONT AND QUESTION THE WITNESSES AGAINST ME.

4. THE RIGHT TO HAVE THE COURT COMPEL WITNESSES TO COME TO COURT AND TESTIFY FOR ME.

5. THE RIGHT TO TESTIFY AT MY TRIAL. THE RIGHT TO REMAIN SILENT AND NOT HAVE MY SILENCE USED AGAINST ME.

6. THE RIGHT TO CLAIM MY PLEA WAS THE RESULT OF PROMISES OR THREATS NOT DISCLOSED TO THE COURT, OR THAT IT WAS NOT MY CHOICE TO PLEAD GUILTY

7. THE RIGHT TO APPEAL AS OF RIGHT AS TO CONVICTION AND SENTENCE.

(*Id.*)  Thomas and his trial counsel signed below this notice. (*See id.*)  Both signatures are dated "9/16/14." (*Id.*)

The trial court then asked Thomas whether he "had an opportunity to read [the Plea Form], to understand it and to review it with [his] attorney." (9/.16/2014 Tr. ECF No. 8-4, PageID.285.)  Thomas responded "Yes, I have." (*Id.*)  The court next asked whether Thomas' signature was at the bottom of the Plea Form. (*Id.*)  Thomas responded "Yes, it is." (*Id.*)  The court then asked Thomas if he had "any question for [the court] either with regard to th[e Plea Form] or with regard to [Thomas'] no

contest plea?" (*Id.*)  Thomas responded "No." (*Id.*, PageID.286.)  The trial court then explained that the "statutory maximum penalty" for first-degree criminal sexual conduct was "life in prison," and it asked Thomas if he understood that potential maximum punishment. (*Id.*)  Thomas replied "Yes." (*Id.*)  The court then asked Thomas if, "[k]nowing all of those things," he pleaded "no contest to Criminal Sexual Conduct in the First Degree?" (*Id.*)  Thomas replied "Yes." (*Id.*)

The trial court then advised Thomas of all the trial rights that he would be waiving by entering his plea. (*See id.*, PageID.287.)  The court advised Thomas that he would be waiving the right to a trial by jury, the right to trial by the court, the presumption of innocence, the right to be proven guilty beyond a reasonable doubt, the right to confront witnesses, the right to assistance of counsel, the right to compulsory process, the right to present defense witnesses, the right to remain silent, the right to have his silence not be used against him, and the right to testify in own defense. (*See id.*, PageID.287–288.)

The court then asked whether Thomas understood that he was "giving up [his] right to an automatic right of appeal." (*Id.*, PageID.288.)  Thomas then asked if the court meant that "once this is over with … I can't appeal this case?" (*Id.*)  The trial court responded, "[w]ell, you don't have an automatic right to it, but you could ask for leave to appeal, but you don't have an automatic right to appeal." (*Id.*)  The

transcript then reflects that Thomas' counsel "confer[ed]" with Thomas. (*Id.*)  The

transcript then indicates as follows:

> MR. EVANS: Do you understand that?
>
> THE COURT: Do you understand you're giving up your right to an automatic right of appeal?
>
> MR. EVANS:[4] Yes.

(*Id.*, PageID.288–289.)

In response to further questioning from the court, Thomas denied that anyone

had "threatened [him] or promised [him] or coerced [him] in order to enter into this

no contest plea other than what has already been listed on the record." (*Id.*,

PageID.289.)  Thomas further acknowledged that he would not be able to "come

back later and claim [he was] threatened or promised or coerced in order to enter

into this no contest plea." (*Id.*)  Thomas also said that it was his own choice to enter

the plea. (*See id.*)  Thomas agreed that he was entering the plea "knowingly,

intelligently, voluntarily, understandingly, and accurately." (*Id.*)

The parties then stipulated to the investigator's report as the factual basis for

the plea. (*See id.*)  The court found that "the no contest plea is appropriate based

upon civil liability." (*Id.*, PageID.290.)  Thomas' counsel and the prosecutor then

---

[4] "Mr. Evans" was the name of Thomas' trial counsel.  It is unclear from the record whether this second reference to "Mr. Evans" was a typographical error by the stenographer, or whether Mr. Evans was in fact or purporting to speak on Thomas' behalf.

agreed that (1) there were no "promises, threats, or inducements that [had] not been disclosed on the record" (2) that the court "complied with the Michigan Court Rules, including Michigan Court Rule 6.302 b through d," and (3) that "the plea [was] knowingly, intelligently, voluntarily, understandably, and accurately entered into[.]" (*Id.*, PageID.293.)

Based on the representations made during the plea hearing, the court found that "the plea [was] knowingly, intelligently, voluntarily, understandably, and accurately entered into," and it "enter[ed] a plea of no contest […] to the [charge of] Criminal Sexual Conduct in the First Degree." (*Id.*, PageID.293.)  The court then scheduled a sentencing hearing for October 10, 2014.

## E

At the scheduled sentencing hearing on October 10, 2014, the parties noted that when Thomas entered his plea, he "was not advised … that he would, also, be required to register on the Sex Offenders Registry" and that he "would be subject to lifetime electronic monitoring once he's released." (10/10/2014 Hr'g Tr., ECF No. 8-5, PageID.298.)  The parties agreed that the failure to disclose these consequences "would be a basis [for Thomas to] withdraw his plea." (*Id.*, PageID.298–299.) Thomas' trial counsel then told the court that he had explained this fact to Thomas, and that Thomas wanted time to "think about what he wanted to do on that subject[.]"

(*Id.*, PageID.299.)  The court granted that request and scheduled a second sentencing hearing for October 14, 2014. (*See id.*)

<strong>F</strong>

At the October 14, 2014, sentencing hearing, the court reiterated to Thomas that, if he were to proceed with his plea, he would be "subject to […] mandatory lifetime electronic tether monitory" and "required to register with the Sex Offender Registration Act." (*See* 10/14/2014 Hr'g Tr., ECF No. 8-6, PageID.303.)  The court then asked whether Thomas "still enter[ed] a no contest [plea] to Criminal Sexual Conduct in the First Degree?" (*Id.*, PageID.303–304.)  Thomas responded "Yes." (*Id.*, PageID.304.)

The court then proceeded with sentencing.  Thomas' trial counsel confirmed that he had "an adequate opportunity to review both the presentence report and the sentencing guidelines with [Thomas.]" (*Id.*, PageID.305.)  Thomas' counsel offered a number of unopposed corrections to the sentencing guidelines, which the court also accepted. (*See id.*, PageID.305–308.)  Thomas' counsel opined that the correct range under the sentencing guidelines – *i.e.*, the range in which Thomas' minimum sentence should fall, *see fn. 1, supra* – was "180 to 360 or life." (*Id.*, PageID.307.)  The prosecutor concurred with that guidelines calculation. (S*ee id.*, PageID.307-08.)

The trial court then asked Thomas whether he "had an adequate opportunity to review both the presentence report and the sentencing guidelines with [his]

12

attorney." (*Id.*, PageID.308.) Thomas replied "Yeah, yes." (*id.*) The court then asked whether "there [were] any additions, corrections, deletions, factual changes" that Thomas wished to make to the report or the guidelines calculations beyond what had already been discussed. (*Id.*) Thomas responded "No." (*Id.*)

The court then heard argument on sentencing. The prosecutor emphasized the severity of the allegations against Thomas and read a statement from the victim. (*See id.*, PageID.308–312.) With respect to a sentencing recommendation, the prosecutor noted that "the guidelines [] are pretty broad." (*Id.*, PageID.312.) He recommended a sentence "in the upper range of the guidelines." (*Id.*) He noted further that the victim asked for a sentence at "the upper limits of the guidelines" and indicated that he agreed that such a sentence "would be appropriate." (*Id.*, PageID.312–313.) He also stated that the prosecution would be "asking the Court eventually to order a buccal swab from the defendant" for a "paternity test that [the victim was] going to be attempting to put together[.]" (*Id.*)

Thomas' counsel went next. He requested "a sentence at the bottom of the guidelines." (*Id.*) He argued that Thomas' plea had spared the victim from having to testify in court. His argument, in its entirety, was as follows:

> Your Honor, we would ask for a sentence at the bottom of the guidelines. I guess the most important thing is, is that he did plead guilty, okay. He did save or he did plea on this case. He did save the victim from having to testify to this, the length of trial, and all of that.

> I realize this is a no contest plea, but we would ask the
> Court to consider that as an important factor in this, in just
> setting the sentence in this matter.

(*Id.*, PageID.314.)

Finally, the court asked Thomas if he wanted to say anything.   Thomas responded "Nothing. I plea[d] no contest. I just – I don't have nothing to say. I mean it's a bunch of violations in this case and I'll just, I'm going to come back on appeal." (*Id.*, PageID.314.)

The court then sentenced Thomas "to 280 months minimum to a maximum of seven hundred months with the Michigan Department of Corrections." (*Id.*)  At the conclusion of sentence, the trial court advised Thomas that he could "file an Application for Leave to Appeal your conviction and sentence." (*Id.*)

## G

On April 9, 2015, Thomas filed a *pro se* motion before the trial court to withdraw his plea. (*See* Mot. to Withdraw, ECF No. 8-11, PageID.391.)  Thomas asserted one basis to withdraw his plea: that the plea was "not knowing, voluntary and intelligent" and thus violated due process because he was "under a misapprehension of law." (*Id.*, PageID.392.)  Specifically, Thomas – in a sworn affidavit attached to his motion – asserted that "[a]t the time of [his] no contest plea," he "believed that [he] could […] appeal" "issues related to the investigation of [his] case, [his] rights to a speedy trial, *[B]rady* violation, prosecutorial misconduct,

14

sentencing, ineffective assistance of counsel, and other issues [he] believed were present in [his] case." (Thomas Aff. at ¶¶ 4, 3, ECF No. 8-11, PageID.398.).  Thomas explained, however, that he subsequently learned that his no contest plea "waive[d] [his] right to appeal the trial court's rulings on non-jurisdictional questions," and he was therefore unable to appeal those issues even by leave.[5] (Mot. to Withdraw, ECF No. 8-11, PageID.394.)   Thomas stated that "[p]rior to entering" his plea, his attorney "did not tell" him whether he would be able to appeal those issues. (Thomas Aff. at ¶ 3, ECF No. 8-11, PageID.398.)

Thomas further argued in his motion that he was "confused" by the trial court's explanation that there was a "difference between an application for leave to appeal[] and an appeal by right," and that "it was reasonable for [him] to interpret [the trial court's colloquy] to mean that [he] could appeal the issues mentioned above" even if only by leave. (Mot. to Withdraw, ECF No. 8-11, PageID.394.) Thomas insisted that if had he "known that [he] could not appeal these issues, [he] would not have pleaded no contest" and, instead "would have insisted on going to trial[.]" (Thomas Aff. at ¶ 5, ECF No. 8-11, PageID.398.)   Thomas therefore

---

[5] Under Michigan law, a defendant who pleads guilty or no contest waives the right to appeal, even by leave, any non-jurisdictional defects. *See*, *e.g.*, *People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) ("Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. [….] Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.").

requested that he "be allowed to withdraw his plea." (Mot. to Withdraw, ECF No. 8-11, PageID.395.)

On June 4, 2015, the trial court held a hearing on Thomas' motion to withdraw his plea. (*See* 6/4/2015 Hr'g Tr., ECF No. 8-8.)  The trial court appointed new counsel, Jeffrey G. Schwartz, to represent Thomas at that hearing. (*See id.*, PageID.324.) Schwartz then argued the motion on Thomas' behalf. (*See id.,* PageID.327.)  Schwartz reiterated Thomas' argument that Thomas was never informed that his no contest plea waived his right to appeal non-jurisdictional issues. (*See id.*, PageID.327-329.)  Thomas also spoke at the hearing and insisted that he "would have never took this plea if [he] would have had the right advice." (*Id.*, PageID.329.)  The prosecution responded that Thomas' motion was untimely under Michigan Court Rule 6.310 and thus that his motion should be denied.[6] (*See id.*, PageID.330-331.)

---

[6] Thomas testified at this hearing that he mailed his motion, while incarcerated, within the timeframe permitted under the Michigan Court Rules (*See* 6/4/2015 Hr'g Tr., ECF No. 8-11, PageID.330-335.)

The trial court denied Thomas' motion. (*See id.*, PageID.336.)  It found that the motion was both (1) "untimely" and (2) "frivolous" because Thomas was informed that he was waiving his right to an appeal by right. (*Id.*)  The trial court's ruling was as follows:

> Well, the Court is going to find that the motion is untimely, but in addition to that even if it wasn't untimely, it's a frivolous appeal. And I'm going to go over. There was the plea was taken on Tuesday, September 16, 2014, and I'm going to read from page twenty-one and page twenty-two of the transcript. "Do you understand you're giving up your right to an automatic right of appeal?" Mr. Thomas "Pause. So I mean after once this over we're saying I can't appeal the case?" The Court, "Well, you don't have an automatic right to it, but you could ask for leave to appeal. But you don't have an automatic right to appeal". "Attorney Evans conferring with defendant". Mr. Evans, "Do you understand that?" The Court, "Do you understand you' re giving up your right to an automatic right of appeal?" Mr. Thomas, "Yes".
>
> Then in addition, at the sentencing on October 14th, 2004, the Court again advised him, "Sir, you may file an application for leave to appeal your conviction and sentence." So he knew all along that this was, he had given up his automatic right to appeal. So the motion on its face is frivolous, also, but the Court doesn't even think we need to get to that because it was untimely. So for both of those reasons I'm going to deny the defendant's motion to withdraw the plea. Now he has a right to go to the Court of appeals. He has forty-two days in which to appeal my decision to the Michigan Court of Appeals. If he can't afford an attorney the Court will appoint an attorney for him and furnish him with transcripts and records necessary to handle the appeal.

(*Id.*, PageID.496–497.)

## H

On November 3, 2015, Thomas' substitute appointed appellate counsel[7] filed a delayed application for leave to appeal in the Michigan Court of Appeals. (*See* Thomas Mich. Ct. of Appeals Application, ECF No. 8-11, PageID.375.)   That application for leave to appeal raised a single claim: "that the trial court [] abused its discretion" "when it denied [Thomas'] motion to withdraw" his no contest plea.[8] (Thomas MCOA App., ECF No. 8-11, PageID.387.)   Thomas first argued that the trial court erred when it rejected his motion to withdraw his plea as untimely. (*See id.*, PageID.388.)   Thomas next argued that the trial court erred on the merits. Specifically, Thomas argued that the trial court's conclusion that he (Thomas) was informed that he was waiving his right to appeal "missed the mark" because he (Thomas) "had no way to know that he could not appeal, even by leave, numerous issues that he wanted to raise," including his "right to speedy trial, *Brady* violations, prosecutorial misconduct, ineffective assistance of counsel, and other issues in terms of the investigation of the case itself." (*Id.*, PageID.388.)   Thomas claimed again that

---

[7] Thomas' substitute appointed appellate counsel, Donald R. Cook, was appointed "shortly after" Thomas' motion to withdraw was denied. (Cook Aff. at ¶ 2, ECF No. 8-11, PageID.379.)

[8] The record before this Court contains several letters from Thomas to Cook, as well as to the Michigan Court of Appeals, suggesting that Thomas wanted Cook to raise additional issues in his application for leave to appeal. (*See* Thomas Ltrs., ECF No. 8-11, PageID.412, 415, 416, 417–418, 419, 425–426.)   Nonetheless, the application for leave to appeal filed by Cook ultimately raised only the one issue identified above in text.

he "was never informed that he could not [appeal those issues]" and that "he was not properly and fully informed by his attorney" (*Id.*, PageID.389, 377.)  Thomas argued therefore that "the mere recitation that any appeal would be by leave cannot be seen as imparting that information" (*i.e.*, that some issues could not be appealed at all). (*Id.*, PageID.389.)  Thus, Thomas asserted that his plea was not "knowing, voluntary and understanding." (*Id.*, PageID.377.)

The Michigan Court of Appeals denied Thomas's delayed application "for lack of merit in the grounds presented." (12/23/2015 Mich. Ct. of Appeals Order, ECF No. 8-11, PageID.424.)

# I

Thomas next filed a *pro se* application for leave to appeal in the Michigan Supreme Court on January 26, 2016. (*See* Thomas Mich. Sup. Ct. Application, ECF No. 8-12, PageID.504.)  In that application, Thomas re-raised the same claim that he raised in the Michigan Court of Appeals – *i.e.*, that the trial court abused its discretion when it denied his motion to withdraw his plea. (*See id.*, PageID.505.)

Thomas also added two new claims to this application.  First, he asserted a claim for "[i]neffective assistance of trial counsel." (*Id.*, PageID.510.)  Under this claim, Thomas argued that his plea was "involuntary" because he "had [an] incomplete understanding of [his] plea" and "counsel failed to inform" Thomas "of [the required] sex offender registration[.]" (*Id.*)  Second, Thomas asserted a claim

for ineffective assistance of appellate counsel. (*See id.*, PageID.511.)   Thomas argued that his appellate counsel was ineffective for "fail[ing] to file a claim of ineffective assistance of tr[ia]l counsel" and "omitting a dead bang winner on appeal [as to] issues obvious from trial record[.]" (*Id.*)   In support of this claim, Thomas cited cases setting forth the standard for evaluating a claim that appellate counsel rendered deficient performance. (*See id.*, citing *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995)).

On June 28, 2016, Michigan Supreme Court denied Thomas' application in a standard form order. *See People v. Thomas*, 880 N.W.2d 553 (Mich. 2016) (Table).

**J**

On June 29, 2017, Thomas returned to the state trial court and filed a motion for relief from judgment under Michigan Court Rule 6.500, *et seq.,* a sub-chapter of the Michigan Court Rules that provides for limited "post appeal relief" (the "6.500 Motion"). (*See* 6.500 Mot., ECF No. 8-9, PageID.340.)   The state trial court ultimately denied the 6.500 Motion in a written Opinion and Order (the "6.500 Denial Order"). (*See* 6.500 Denial Order, ECF No. 8-10.)   Thomas' framing of the 6.500 Motion and the trial court's ruling on that motion are central to the Court's resolution of several of Thomas' claims here, so the Court sets forth below in some detail the Michigan Court Rules under which Thomas sought relief, the contents of his motion, and the text of the 6.500 Denial Order.

**1**

Sub-chapter 6.500 *et seq*. of the Michigan Court Rules establishes a detailed set of standards and procedures governing a criminal defendant's post appeal attack on his conviction.   As relevant here, Michigan Court Rule 6.502(A) authorizes a defendant who has been convicted of an offense and whose conviction is "not subject" to direct review to file "a motion to set aside or modify [his] judgment" of conviction.   Michigan Court Rule 6.508(D) ("MCR 6.508(D)") then addresses a defendant's "Entitlement to Relief" on such a motion.   In relevant part, that rule provides as follows:

> The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion […]
>
> > (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
> >
> > > (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> > >
> > > (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that […]
> > >
> > > > (ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand[.]

MCR 6.503(D)(3)(a), (b)(ii).

As the Sixth Circuit has explained, MCR 6.508(D) "has both a procedural and a substantive component." *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). The substantive component is found in the language at the very beginning of the rule that places on the defendant the "burden of establishing entitlement to the relief requested."  That provision "describes the substantive burden a [defendant] must meet in order to qualify for postconviction relief." *Ivory v. Jackson*, 509 F.3d 284, 292 (6th Cir. 2007).  The "specific procedural requirements" of the rule are found in "subparts" (D)(1) through (D)(3). *Id*.  Subpart (D)(3) is the subpart that is relevant here.  That procedural subpart "prohibits courts from granting relief, absent a showing of cause and prejudice, on the basis of claims that a [defendant] could have brought on direct review but in fact did not." *Id*.

## 2

Thomas began the 6.500 Motion by identifying the two claims that he was raising.  He stated the claims as follows:

ISSUE I

WAS DEFENDANT THOMAS DENIED HIS FOURTEENTH, SIXTH, AND FIFTH AMENDMENT CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL, AND IT ENTITLED TO WITHDRAW HIS GUILTY PLEA / NOLO CONTENDERE PLEA, WHERE HIS PLEA WAS ILLUSORY, INVOLUNTARY, AND UNKNOWING, WHERE THE PLEA PROVIDED NO BENEFIT TO DEFENDANT, IS AN UNCONSCIONABLE CONTRACT, AND UNENFORCEABLE?

ISSUE II

> WAS DEFENDANT THOMAS DEPRIVED OF HIS LIBERTY
> AND THE EFFECTIVE ASSISTANCE OF COUNSEL
> WHERE COUNSEL WRONGFULLY ADVISED THE
> DEFENDANT TO PLEAD GUILTY TO AN ILLUSORY
> PLEA, WHERE THERE WAS NO BENEFIT TO THE
> DEFENDANT IN TAKING THE PLEA, AND WHERE THE
> DEFENDANT UNKNOWINGLY WAIVED HIS
> CONSTITUTIONALLY PROTECTED RIGHTS TO AN
> APPEAL OF RIGHT?

(6.500 Mot., ECF No. 8-9, PageID.344.)  From this point forward, the Court will refer to Thomas' first claim in the 6.500 Motion as the "6.500 Due Process Claim" and to the second claim in the motion as the "6.500 Ineffective Assistance Claim."

After identifying his two claims, Thomas implicitly acknowledged that he had not raised either claim on direct appeal.  He did that when he told the trial court that he "met the [r]requirement of MCR 6.508(D)(3)" (*id.*, PageID.346)  – which, as noted above, is the procedural rule that limits the circumstances under which a trial court may grant a motion for relief from judgment on a claim that was *not* raised on direct appeal. He said that he satisfied MCR 6.508(D)(3) by demonstrating "'Cause' and 'Prejudice'" – the two showings specifically required by the rule. (*Id.*)  He listed "Ineffective Assistance of Counsel" as the cause and prejudice that satisfied MCR 6.508(D)(3). (*Id.*)

**3**

After Thomas identified his claims and acknowledged that he had not raised them earlier, he set forth his arguments in support of the claims.

**a**

In the 6.500 Due Process Claim, Thomas contended that the entry of his plea violated his right to due process for two reasons: because the plea was "illusory" and because he did not knowingly and voluntarily enter the plea. (*Id.*)  In support of his theory that his plea was illusory, Thomas highlighted that his plea waived his automatic right to appeal altogether and limited the issues that he could raise in an application for leave to appeal. (*See id.*, PageID.348, 353.)  He then stressed that even though he gave up those valuable rights, he received a harsher sentence following his plea (a minimum of 280 months) than the prosecutor had originally indicated he would seek if Thomas were to be convicted following a trial (a minimum of 240 months).  He insisted that if he had elected to proceed to trial, "he would have in fact received the same, or a lessor [sic] sentence" than he received following his plea, and he would have retained his right to appeal all of the issues he wished to raise. (*Id.*, PageID.353.)

In support of his theory that his plea was not knowing and voluntary, Thomas highlighted his statement at sentencing that he would "come back on appeal." (*Id.*)  Thomas asserted that if he knew he "would **not be coming back on appeal**, he

would have insisted on going to trial[.]" (*Id.*, PageID.354 (emphasis in original).) Moreover, he claimed that his plea was not "intelligent" because he waived his right to a jury trial and to a direct appeal "for No Benefit whatsoever." (*Id.*, PageID.356.)

### b

In the 6.500 Ineffective Assistance Claim, Thomas argued that his trial counsel performed deficiently in several respects.  First, he argued that his trial counsel was ineffective for advising him to take a plea that was illusory and resulted in him receiving a lengthier sentence than the original plea deal offered. (*See id.*, PageID.359.)  Next, Thomas claimed that his trial counsel was ineffective "for allowing [Thomas] to believe that the previously discussed plea of eight to twenty-five years" – *i.e.*, the plea deal that Thomas rejected – "was what [Thomas] was pleading to." (*Id.*, PageID.368.)  Thomas argued that trial counsel "absolutely had a constitutional obligation to inform [Thomas] that he was not pleading to the original plea agreement[.]" (*Id.*, PageID.360.)  Finally, Thomas contended that his trial counsel did not sufficiently explain the impact of his plea on his right to appeal. (*See id.*, PageID.359.)

### 4

On March 9, 2018, the state trial court denied the motion and issued the 6.500 Denial Order. (*See* 6.500 Denial Order, ECF No. 8-10.)  The court first noted that Thomas had pleaded no contest to a charge of first-degree criminal sexual conduct.

It then explained that Thomas had filed applications for leave to appeal challenging his conviction in the Michigan Court of Appeals and the Michigan Supreme Court. The court next turned to the arguments in the 6.500 Motion and rejected them.

Importantly, when the court set forth the governing legal standards in the 6.500 Denial Order, the court cited *both* the substantive component *and* the procedural component of MCR 6.508(D).  First, the court parroted the substantive language from MCR 6.508(D) and noted that Thomas bore "the burden to establish his entitlement to relief." (*Id.*, PageID.371.)   Second, the court quoted MCR 6.508(D)(3) – the procedural component of the rule that applies where a defendant has not raised a claim on direct appeal. (*See id.*)

After parroting and quoting the substantive and procedural components of MCR 6.508(D), the court turned to the merits of Thomas' claims.   The court found "no error attributed to trial counsel, or the Court in the course of Defendant's plea and sentencing proceedings." (*Id.*)

Finally, the court concluded its ruling as follows: "Finding no cognizable claim upon which relief might be granted, pursuant to MCR 6.508(D)(3) [the procedural component of MCR 6.508(D)] and MCR 6.302(A) [the Michigan Court Rule concerning the requirements for the entry of a plea], Defendant's motion for relief from judgment must be DENIED." (*Id.*, PageID.373.)

In *toto*, the 6.500 Denial Order (which, for reasons described in more detail below, is worth quoting in its entirety), provided as follows:

> This matter is before the Court on a Motion for Relief from Judgment. For the reasons stated below, the Court will deny this motion. On September 16, 2014, Defendant Eric L. Thomas, was convicted by nolo contendere plea of first-degree criminal sexual conduct (CSC 1st), contrary to MCL 750.520b. On October 14, 2014, Defendant was sentenced to 280 to 700 months in prison. On December 23, 2015, Michigan's Court of Appeals (Docket No. 330047) denied Defendant's delayed application for leave to appeal for lack of merit in the grounds presented. On June 28, 2016, Michigan's Supreme Court (Docket No. 153135) summarily denied Defendant's application for leave to appeal the December 23, 2015 judgment of the Court of Appeals.
>
> Defendant now submits Motion for Relief from Judgment, pursuant to MCR 6.500 *et. seq.* The Prosecution has not filed a response. Specifically, Defendant avers: (1) he was denied his 14th, 6th and 5th Amendment Constitutional Rights to due process of law and a fair trial, and is entitled to withdraw his nolo contendere plea where the plea was illusory, involuntary and unknowing ... ; (2) he was deprived of his liberty and the effective assistance of counsel where counsel wrongfully advised him to plead guilty ... where there was no benefit to Defendant in taking the plea, and where he unknowingly waived his Constitutionally protected rights to an appeal of right. (Defendant's motion.)
>
> Defendant bears the burden to establish his entitlement to relief under MCR 6.508(D). MCR 6.508(D)(3) provides, in pertinent part:
>
> > The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion .. . (3) alleges grounds for relief other than jurisdictional

27

defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates (a) good cause for failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief ....

In Defendant's case, this Court finds no error attributed to trial counsel, or the Court in the course of Defendant's plea and sentencing proceedings. MCR 6.302(A) provides, in part: The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Contrary to Defendant's averments, the record reveals no defect in the plea proceedings that would necessitate a new trial. Amidst jury selection, at Defendant's jury trial, defense counsel broke the news that Co-Defendant pled guilty, and the Prosecution now sought to endorse him as a witness. (Plea Transcript, pp 3-4.) The parties disputed the equity of allowing Co-Defendant to testify given the lack of notice to the defense, etc. After a brief recess, Defendant entered a nolo contendere plea. (PT, pp 16-17.) The parties agreed that a nolo contendere plea was appropriate on the basis of II civil liability." (PT, p 17.) To establish the requisite factual basis for the nolo plea, this Court relied on "the investigator's report," presumably the product of Co-Defendant's interview which immediately preceded his guilty plea. The parties stipulated to the contents of the report and marked it as Exhibit #1 (PXl). (PT, p 23.) The investigator's report was read into the record by the Prosecutor. (PT, pp 23-25.) Upon a thorough review of the record, this Court finds no deviation from the requirements of Michigan's Court Rules. At the beginning of his sentencing hearing, Defendant was advised that his nolo contendere plea also carried mandatory lifetime tether monitoring and SORA registry. Defendant was asked, "Do you still enter a no contest [plea] to Criminal Sexual Conduct in the First Degree?" Defendant replied unequivocally, "yes." (Sentencing Transcript, pp 3-4.)

28

Defendant replied in like fashion when asked whether he understood he was giving up his "automatic right of appeal." When asked, "Do you understand you can't come back later and claim this wasn't your own choice? Defendant replied, "Yes." (PT, p 22.) At sentencing the parties stipulated the plea was "proper." (ST, p 4.)

Finding no cognizable claim upon which relief might be granted, pursuant to MCR 6.508(D)(3) and MCR 6.302(A), Defendant's motion for relief from judgment must be DENIED.

(*Id.*, PageID.370–373.)

## K

After the trial court issued the 6.500 Denial Order, Thomas filed a *pro se* application for leave to appeal in the Michigan Court of Appeals. Thomas' brief in support of that application largely echoed the 6.500 Motion. (*See* ECF No. 8-13, PageID.580–609.) The Michigan Court of Appeals denied Thomas' application on the ground that Thomas "ha[d] failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 8-14, PageID.671.)

## L

Thomas next filed a *pro se* application for leave to appeal to the Michigan Supreme Court which, again, tracked his 6.500 Motion. (*See* ECF No. 8-14, PageID.628–656.) The Michigan Supreme Court denied leave to appeal on the ground that Thomas "ha[d] failed to meet the burden of establishing entitlement to

relief under MCR 6.508(D)." *See People v. Thomas*, 931 N.W.2d 362 (Mich. 2019) (Table).

## M

On September 23, 2019, Thomas filed his current petition for a writ of habeas corpus in this Court under 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)  Thomas' petition sets forth four claims:

> GROUND ONE: DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DENIED THE MOTION TO WITHDRAW THE NO CONTEST PLEA IN THIS CASE?
>
> GROUND TWO: INEFFECTIVE OF TRIAL COUNSEL ANALYZED UNDER TEST IN *STRICKLAND* SUPRA, COUNSEL'S PERFORMANCE FELL BELOW OBJECTIVE STANDARD OF REASONABLENESS AND HAD IT NOT BEEN FOR COUNSEL'S ERROR RESULTS OF PROCEEDINGS WOULD HAVE BEEN DIFFERENT.
>
> GROUND THREE: EFFECTIVE ASSISTANCE OF' APPEALS COUNSEL RIGHT EFFECTIVE ASSISTANCE *EVITTS V. LUCY* 469 U.S. 387; 396; 83 L Ed 2d 82; 1105 S. Ct. 830 (1985), TO ESTABLISH THE INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IT MUST BE SHOWN THAT COUNSEL' S PERFORMANCES WAS PREJUDICIAL *STRICKLAND*, 466 U.S. at 687; *RATLIFF V. UNITED STATES* 999 F 2d 1023, 1026 (6th Cir 1993).
>
> GROUND FOUR: WAS DEFENDANT THOMAS DENIED HIS FOURTEENTH, SIXTH, AND FIFTH AMENDMENT CONSTITUTIONAL RIGHTS TD DUE PROCESS OF LAW AND A FAIR TRIAL, AND IS ENTITLED TO WITHDRAW HIS GUILTY PLEA / NOLO CONTENDPE PLEA, WHERE HIS PLEA WAS

ILLUSORY, INVOLUNTARY, AND UNKNOWING, WHERE THE PLEA PROVIDED NO BENEFIT TO THE DEFENDANT, IS AN UNCONSCIONABLE, AND UNENFORCEABLE.

(*Id.*, PageID.15.)  Thomas also referenced and attached his 6.500 Motion. (*See id.*, PageID.15–45.)

## N

Respondent filed a response to the petition on March 30, 2020. (*See* Resp., ECF No. 7.)  As further detailed below, he argues that Thomas is not entitled to relief on any of his claims because they are either procedurally defaulted and the default is not excused, the claims were not exhausted in state court, relief is precluded under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241 *et seq.* ("AEDPA"), and/or because the claims lack merit.

## O

After the Court reviewed the petition and response, the Court determined that Thomas would benefit from the assistance of counsel.  Accordingly, on January 6, 2021, the Court issued an order appointing the Federal Defender's Office (the "FDO") as counsel for Thomas in his habeas proceedings. (*See* App't Order, ECF No. 9.)  Attorneys Colleen P. Fitzharris and Amanda Bashi of the FDO subsequently filed two supplemental briefs on Thomas' behalf and also presented oral argument to the Court in support of Thomas' petition. (*See* Supp. Brfs., ECF Nos. 17 and 28.) The written briefs by Fitzharris and Bashi, as well as the oral presentation by

31

Fitzharris, were outstanding, and the Court is grateful to Fitzharris and Bashi for the valuable and highly-effective work they performed in clarifying the challenging issues for decision.

The written submissions by Thomas' appointed counsel helpfully clarify that Thomas' four numbered habeas claims quoted above actually encompass a total of eight theories on which Thomas seeks relief. The eight theories fall into three categories: (1) due process; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. As clarified by Thomas' appointed counsel, the theories on which Thomas seeks relief are as follows:

- **Due Process - Illusory Plea**: Thomas entered into a plea agreement – as embodied in the Plea Form – and the agreement violated his due process rights because it conferred no benefit on him. (*See* Second Supp'l Br., ECF No. 28, PageID.888–889.)

- **Due Process - Sentencing Exposure**: Thomas' plea violated his due process rights because Thomas was unaware of his sentencing exposure when he pleaded no contest. (*See id.*, PageID.890.)

- **Due Process – Appellate Waiver**: Thomas did not understand that his no contest plea waived his right to an automatic appeal and his right to appeal non-jurisdictional defects that occurred before he entered his plea, and thus his plea violated due process. (*See id.*, PageID.891–892.)

- **Ineffective Assistance of Trial Counsel – Illusory Plea**: Thomas' trial counsel provided ineffective representation when he failed to explain to Thomas that his no contest plea offered him no benefit. (*See id.*, PageID.894–895.)

- **Ineffective Assistance of Trial Counsel – Sentencing Range**: Thomas' trial counsel provided ineffective representation when he failed to explain to Thomas the sentencing exposure that Thomas faced. (*See id.*, PageID.895.)

- **Ineffective Assistance of Trial Counsel – Appeal Waiver**: Thomas' trial counsel provided deficient representation when he failed to explain to Thomas that Thomas' no contest plea prevented him from raising on appeal non-jurisdictional defects that occurred before he entered his plea. (*See id.*, PageID.895–896.)

- **Ineffective Assistance of Appellate Counsel – Failure to Raise Due Process Challenges**: Thomas' appellate counsel provided deficient representation when he failed to raise on appeal certain due process challenges to the entry Thomas' plea. (*See* Supp'l Chart, ECF No. 20, PageID.774.)

- **Ineffective Assistance of Appellate Counsel – Failure to Raise Ineffective Assistance of Trial Counsel**: Thomas' appellate counsel provided deficient representation when he failed to assert ineffective assistance of trial counsel in his appeal challenging the denial of Thomas' motion to withdraw his plea. (*See id.*, PageID.775.)

## III

As a threshold matter, the Court considers whether the doctrine of procedural default bars this Court from granting relief on any of Thomas' claims.  Respondent argues that Thomas has procedurally defaulted the following claims: (1) Thomas' Due Process – Illusory Plea claim, (2) Thomas' Due Process – Sentencing Exposure claim, and (3) all of Thomas' ineffective assistance of trial counsel claims.  And Respondent says that Thomas' procedural default of these claims cannot be excused.

As described above, Thomas presented each of these claims to the state trial court for the first time in the 6.500 Motion.  From this point forward, the Court will refer to these claims collectively as the "Later Presented Claims."  For the reasons

explained below, the Court agrees with Respondent that the Later Presented Claims are procedurally defaulted and that that default is not excused.

## A

### 1

A "procedural default results where three elements are satisfied: (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an adequate and independent state ground foreclosing review of a federal constitutional claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (internal quotation marks omitted).  In order to determine whether the state courts rejected a claim based upon a procedural rule, this Court must look to "the last reasoned state court opinion" that addressed those claims, *Guilmette*, 624 F.3d at 291, and must evaluate whether the state court "clearly and expressly state[d] that its judgment rests on a procedural bar." *Harris v. Reed*, 489 U.S 255, 263 (1989).

### 2

The last reasoned state court opinion addressing the Later Presented Claims was the state trial court's 6.500 Denial Order.  That order cited to and quoted MCR 6.508(D)(3). (*See* 6.500 Denial Order, ECF No. 8-10.)  As described above, that is a procedural rule that bars relief on a claim that was not presented on direct appeal

absent a showing of cause and prejudice.  It is undisputed that a Michigan court's invocation of this rule constitutes an adequate and independent state ground that forecloses review of a habeas petitioner's federal claim. *See Guilmette*, 624 F.3d at 291 (referring to MCR 6.503(D)(3) as "procedural-default rule"); *McKinney v. Horton*, 826 F. App'x 468, 472 (6th Cir. 2020) (*citing Guilmette* and explaining that "[w]e have held that Michigan court orders denying relief under MCR 6.508(D)(3) can constitute a procedural bar on federal habeas review").  The dispositive question here with respect to whether Thomas' Later Presented Claims are procedurally defaulted is: did the state trial court actually invoke MCR 6.508(D)(3) and deny relief on those claims in the 6.500 motion, at least in part, on procedural grounds?  It did.

The structure and text of the 6.500 Denial Order confirms that the trial court did invoke the procedural bar of MCR 6.508(D)(3).  The state trial court began the order by noting that Thomas had filed an application for leave to appeal from his plea-based conviction. (6.500 Denial Order, ECF No. 8-10, PageID.370.)  The court then quoted MCR 6.508(D)(3). (*See id.*, PageID.371.)  Finally, the court concluded the order by specifically identifying MCR 6.508(D)(3) as one of the bases on which it was denying relief. (*See id.*, PageID.373.) The court's recognition that Thomas filed an appeal, coupled with its quotation of, and concluding citation to, the procedural rule that bars review of claims not raised on direct review, indicate that

the state court rested its decision, in part, on that procedural rule.  Indeed, as Thomas properly recognizes, "[o]rdinarily, [a Michigan] court's invocation of Rule 6.508(D)(3) suggests reliance on the state procedural rule requiring claims to be raised on direct appeal." (Thomas Supp. Br., ECF No. 17, PageID.709, citing *Stokes v. Scutt*, 527 F. App'x 358, 365 (6th Cir. 2013)).

Thomas counters that even though the 6.500 Denial Order quoted MCR 6.508(D)(3) and concluded by identifying the rule as one of the bases on which it was denying relief, the state trial court did not "clearly invoke the procedural rule." (*Id.*, PageID.709.)  In support of that argument, he highlights several features of the order.  First, he notes that the order did not cite MCR 6.508(D)(3) alone; the order also cited and quoted the substantive component of MCR 6.508(D) – the language requiring a defendant to demonstrate an "entitlement to relief."  (*See id.*)  Second, he observes the while the trial court cited MCR 6.508(D)(3), it offered no analysis expressly applying the standard in that rule to the claims raised in the motion.  For instance, the court did not say that Thomas had failed to raise on direct appeal the claims he presented in his motion. (*See id.*)  Finally (and on a related note), Thomas highlights that all of the actual analysis offered by the trial court went to the merits of Thomas' claims. (*See id.*)  Thomas contends that under these circumstances, it would be unreasonable to conclude that the trial court clearly and expressly rested its decision on a procedural bar. (*See id.*)  Instead, he argues, the most sensible

conclusion is that the trial "court's decision to reject the motion rested on Mr. Thomas's supposed failure to 'establish entitlement to the relief requested'" – a substantive ground – "not the failure to raise claims on direct appeal." (*Id*.)

These are serious arguments. Indeed, there is no doubt that the state trial court could have more clearly said that it was invoking a procedural rule. But the fact that the court could have been clearer does not mean that the court was not clear enough. And for three reasons, this Court cannot accept Thomas' argument that the state trial court failed to effectively invoke a procedural bar.

First, the fact that the 6.500 Denial Order contains a merits adjudication does not mean that the state court did not enforce a procedural bar. *See Harris*, 489 U.S. at 264 n.10; *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1996). The Sixth Circuit has recognized that state courts may invoke a procedural bar and then proceed to offer what is known as an alternative merits adjudication. *See Brooks v. Bagley*, 513 F.3d 618, 624 (6th Cir. 2008) (discussing "alternative merits ruling[s]"). Thus, the merits discussion in the 6.500 Denial Order, standing alone, is not strong evidence that the state trial court did not invoke a procedural bar.

Second, the context of the state court's second reference to MCR 6.508(D) indicates that the court did invoke a procedural bar. In that reference, the court said that it found "no *cognizable* claim upon which relief might be granted, pursuant to MCR 6.508(D)(3) and MCR 6.302(A)." (6.500 Denial Order, ECF No. 8-10,

PageID.373; emphasis added).  The term "cognizable" generally relates to procedural rather than substantive matters.  As the United States Supreme Court has explained (in an admittedly unrelated context), the "ordinary or natural meaning" of "cognizable" is: "[c]apable of being tried or examined before a designated tribunal; within [the] jurisdiction of [a] court or power given to [a] court to adjudicate [a] controversy." *F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994) (citing Black's Law Dictionary 259 (6th ed. 1990)).  Thus, the trial court's use of the word "cognizable" in connection with its citation to MCR 6.508(D)(3) is best read as expressing the court's view that, among other things, it lacked the authority to grant relief to Thomas under that rule – regardless of the merits of his claims – because he failed to raise the claims on direct review.

Finally, this Court declines to accept Thomas' reading of the 6.500 Denial Order because to do so would be to conclude that the state trial court did not understand its own governing rules.  As noted above, the state court quoted and twice cited MCR 6.508(D)(3), including in the portion of its order summarizing the bases for its ruling.  Once again, that rule is entirely procedural; it has no place in a purely substantive ruling.  Thus, if, as Thomas contends, the state court intended the 6.500 Denial Order to be a purely substantive decision, then its repeated citation of MCR 6.508(D)(3) could only have been based upon a serious misunderstanding of that

procedural rule.   This Court is hesitant to conclude that the state court so fundamentally misunderstood its own rules.

For all of these reasons, the Court concludes that the state trial court rejected the Later Presented Claims in the 6.500 Motion, at least in part, on procedural grounds – *i.e.*, based upon Thomas' failure to comply with the rule that required him to raise those claims in his direct appeal of his conviction.   The Later Presented Claims are therefore procedurally defaulted.

## B

Where, as here, a habeas claim has been procedurally defaulted, a federal court may still grant relief on the claim if the petitioner shows "cause for failing to follow the procedural rule [invoked by the state court] and prejudice by the alleged constitutional error." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005).   Thomas has failed to make that showing with respect to any of the Later Presented Claims here.

Thomas argues that ineffective assistance from his appellate counsel constitutes sufficient cause for his failure to raise the Later Presented Claims in his direct appeal.   Deficient performance by appellate counsel "can supply the cause that, together with prejudice, would excuse a procedural default." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).   But that is not the case here.

A claim of ineffective assistance of appellate counsel must generally "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 489.  Thomas says that he satisfied this presentation requirement by claiming ineffective assistance of appellate counsel in his 6.500 Motion. (*See* Thomas First Supp'l Br., ECF No. 17, PageID.711.)  However, the Court concludes that the 6.500 Motion did not include an independent claim by Thomas that his appellate counsel provided deficient performance.  Indeed, the 6.500 Motion does not mention appellate counsel at all.  Accordingly, Thomas did not present an independent claim of ineffective assistance of appellate counsel in that motion, and thus any allegedly deficient performance by his appellate counsel cannot excuse his procedural default.

Thomas counters that "[a] fair reading of [the] 6.500 [M]otion shows that he fairly presented a claim of ineffective assistance of appellate counsel as cause to excuse the procedural default." (Thomas First Supp'l Br., ECF No. 17, PageID. 711.)  Thomas points to two sections of the 6.500 Motion that purportedly do so.  First, Thomas cites to the section of the 6.500 Motion captioned "Entitlement to Relief."  He notes that in that section, he listed "'Ineffective Assistance of Counsel' as cause to excuse the default" under Michigan Court Rule 6.508(D)(3). (*Id.* (quoting 6.500 Mot., ECF No. 8-9, PageID.346).)  Second, Thomas cites to the "Relief" section of

the 6.500 Motion.  He highlights that in that section he requested a *Ginther*[9] hearing "to develop the 'proofs as it relates to counsel's ineffectiveness and deficient performance.'" (*Id.*, PageID.369.)

The Court is not persuaded that these references to ineffective assistance of *counsel* constitute presentment of an independent claim for ineffective assistance of *appellate* counsel.    In the references, Thomas did not identify any alleged deficiencies by appellate counsel, nor did he apply the factors used to assess claims of ineffective assistance of appellate counsel.  Notably, Thomas was familiar with those factors and with how to present a claim of ineffective assistance of appellate counsel.[10]  Thomas therefore was fully capable of setting forth an independent claim of ineffective assistance of appellate counsel in his 6.500 Motion.  He did not do so.

---

[9] Under Michigan state law, when a criminal defendant wishes to raise a claim of ineffective assistance of counsel on appeal based on facts not contained in the existing record, he must request an evidentiary hearing known as a *Ginther* hearing, named after the Michigan Supreme Court's decision in *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

[10] As noted above, before Thomas filed the 6.500 Motion, he had previously asserted a claim for ineffective assistance of appellate counsel in a *pro se* filing with the Michigan Supreme Court, and in that filing, he cited cases outlining the standards governing such a claim and applied those standards to the performance of his appellate counsel. (*See* Thomas Mich. Sup. Ct. App., ECF No. 8-12, PageID.511 (citing *Clemmons v. Delo*, 124 F.3d 944, 954 (8th Cir. 1997) (finding ineffective assistance of appellate counsel for failure to raise on appellate issue); *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995) (finding appellate counsel ineffective for omitting a "'dead-bang' winner"); *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995) (same)).)

Accordingly, Thomas did not present an independent claim of ineffective assistance of appellate counsel to the state courts in the 6.500 Motion, and such a claim therefore cannot serve to excuse his procedural default.[11]

## C

For the reasons explained above, the Court finds that the Later Presented Claims have been procedurally defaulted and that Thomas has not established that that default is excused by the ineffective assistance of appellate counsel (or for any other reason).   Accordingly, Thomas is not entitled to habeas relief on the Later Presented Claims.

## IV

In addition to arguing that ineffective assistance of appellate counsel serves as cause to excuse his procedural defaults, Thomas asserts stand-alone claims of

---

[11] Thomas did assert ineffective assistance of appellate counsel at one point during the state proceedings.  As described above, when the state trial court denied his motion to withdraw his plea, Thomas sought leave to appeal in the Michigan Court of Appeals, and that court denied his application.  Thomas then sought leave to appeal in the Michigan Supreme Court, and in that application, he argued that his appellate counsel in the Court of Appeals had provided ineffective assistance. (*See* Thomas Mich. Sup. Ct. Application, ECF No. 8-12, PageID.511).  Thomas does not argue that he fairly presented his claim of ineffective assistance of counsel to the state courts by including it in his application for leave to appeal to the Supreme Court.  Nor could he.  As discussed in Section IV, *infra*, his presentation of his ineffective assistance of appellate counsel claim to the Michigan Supreme Court at that point does not constitute sufficient presentation of the claim.

ineffective assistance of appellate counsel in his petition.  The Court turns to those claims now.

Respondent argues that the Court cannot grant relief on Thomas' ineffective assistance of appellate counsel claims because Thomas never exhausted the claims in state court.  The Court agrees.  As discussed in detail immediately above, Thomas never presented an independent claim of ineffective assistance of appellate counsel in the state trial court.  Instead, he raised it for the first and only time in the Michigan Supreme Court when he sought leave to appeal in that court arising out of the denial of the motion to withdraw his plea. (*See* Thomas Mich. Sup. Ct. Application, ECF No. 8-12, PageID.511).   Thomas' presentation of his ineffective assistance of appellate counsel claim to the Michigan Supreme Court at that point did not exhaust the claim because, as Thomas properly acknowledges, "[f]air presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by invoking one complete round of the state's appellate review system." (Thomas First Supp'l Br., ECF No. 17, PageID.711 (internal quotation marks omitted) (emphasis added) (quoting *Caver v. Straub,* 349 F.3d 340, 346 (6th Cir. 2003)).)  Because Thomas did not properly "invoke[e] one complete round of the state's appellate review system" with respect to his ineffective assistance of appellate counsel claims, the claims are not exhausted, and the Court cannot grant relief on them.

**V**

Finally, the Court turns to Thomas' one claim that is exhausted, not procedurally defaulted, and which the Court may address on the merits: Thomas' Due Process – Appellate Waiver claim.  In that claim, Thomas asserts that his plea was not voluntary, knowing, and intelligent and thus violated due process because he did not understand that his no-contest plea resulted in a waiver of his ability to appeal, even by leave, non-jurisdictional issues.  For the reasons set forth below, the Court concludes that Thomas is not entitled to relief on that claim.

**A**

The Court begins with the threshold issue of whether the state court's decision rejecting the Due Process – Appellate Waiver claim is subject to deference under AEDPA.  Under AEDPA, a federal court may not grant habeas relief on a claim that a state court "adjudicated on the merits" unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Here, the parties dispute whether the state trial court adjudicated the Due Process – Appellate Waiver claim "on the merits" and thus whether AEDPA deference applies.  The Court concludes that the state trial court did adjudicate the claim on the merits and that the Court must therefore apply AEDPA deference in reviewing the claim.

**1**

The Court's analysis of whether the state trial court adjudicated the Due Process – Appellate Waiver claim "on the merits" must begin with the "healthy presumption" that the state court did so. *Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020).  This presumption "prevails even when the state court's opinion wholly omits," "imperfectly discusses," or fails to "overtly grapple[] with the 'crux'" of a petitioner's claim. *Id*.

When the Court combines this presumption with the plain language of the 6.500 Denial Order, the Court is compelled to conclude that the state trial court decided the Due Process – Appellate Waiver claim "on the merits."  In the 6.500 Motion, Thomas argued that his plea was "clearly unknowing" because he had not been advised about the scope of his appellate waiver (*see* 6.50 Mot., ECF No. 8-9, PageID.353; *see also* Thomas Sec. Supp'l Br., ECF No. 20, PageID.771 (identifying "Due Process: Appellate Waiver" as raised in the 6.500 Motion)), and the state trial court responded that it found "no error attributed to […] the Court in the course of

Defendant's plea and sentencing proceedings." (6.500 Denial Order, ECF No. 8-10, PageID.371.)   The court added that "the record reveal[ed] no defect in the plea proceedings that would necessitate a new trial." (*Id.*)   Especially when considered in light of the applicable presumption described above, the state trial court's findings of "no error" and "no defect" must be regarded as an adjudication on the merits of Thomas' Due Process – Appellate Waiver claim.[12]

**2**

Thomas counters that the 6.500 Denial Order does not constitute an adjudication "on the merits" of his Due Process – Appellate Waiver claim because the state trial court "[m]isconstrued" that claim. (Thomas Second Supp'l Br., ECF No. 20, PageID.771.)   More specifically, Thomas argues that the state trial court failed to recognize his argument that his plea was invalid because he had not been advised that any appeal – even one by leave granted – would be strictly limited to jurisdictional challenges to the proceedings.   Thomas contends that, instead, the state trial court focused only on whether Thomas was advised that he was waiving his

---

[12] As noted above, before the state trial court found "no error" and "no defect," it invoked the procedural bar found in MCR 6.508(D)(3).   It seems unlikely that the state court meant to invoke that bar with respect to Thomas' Due Process – Appellate Waiver claim because, as Respondent acknowledges, Thomas did present that claim during his direct appeal.   In any event, even if the state court meant to invoke a procedural bar as to the Due Process – Appellate Waiver claim, its subsequent merits ruling on the claim – its findings of "no error" and "no defect" – would still be entitled to AEDPA deference because they would be considered "alternative merits adjudications." *Brooks*, 513 at 624–25.

right to an appeal as of right. (*See* Thomas First Supp'l Br., ECF No. 17, PageID.723.)   In support of this argument, Thomas highlights that the state trial court's discussion of the Due Process – Appellate Waiver claim focuses on the portions of the trial record discussing his waiver of his right to appeal by right. (*See id.*)  He further stresses that the trial court never expressly addressed his argument that his waiver was invalid because he was not told that an appeal by leave granted would be limited to claims challenging the trial court's jurisdiction. (*See id.*) Thomas concludes that if the trial court had truly understood and meant to decide his Due Process – Appellate Waiver claim on the merits, it would have addressed whether his plea was valid notwithstanding his contention that he did not understand that he could not raise non-jurisdictional claims in an appeal by leave granted.

Thomas' argument has real logical force.   Courts often address – even if briefly – issues that they intend to decide on the merits.   And where, as here, a defendant presents two arguments and a court expressly discusses only one of them, it is not illogical to conclude that the court may have overlooked the argument omitted from its discussion.   However, Thomas' logical arguments are not enough to overcome the presumption that the state court decided the Due Process – Appellate Waiver claim on the merits.   In *Smith*, the Sixth Circuit underscored that "[t]he Supreme Court has cautioned [] that petitioners will rarely be able to overcome the presumption of merits adjudication." *Smith,* 956 F.3d at 386 (citing *Johnson v.*

*Williams*, 568 U.S. 289, 301 (2013)).  And the Supreme Court has held that the presumption even applies "when a state-court opinion addresses some but not all of a defendant's claims." *Johnson,* 568 U.S. at 298.  Here, while the state court could have indicated more clearly that it was adjudicating the Due Process – Appellate Waiver claim on the merits, the Court cannot conclude, when viewing the 6.500 Denial Order through the lens of the presumption of adjudication, that the state court misconstrued the claim and failed to decide it on the merits.

**3**

Thomas also cites a trio of Sixth Circuit decisions that, he says, support his contention that the state trial court misconstrued the Due Process – Appellate Waiver claim and that the claim is therefore not subject to AEDPA deference.  Those decisions are: *Campbell v. Bradshaw*, 674 F.3d 578, 596 (6th Cir. 2012); *Jells v. Mitchell*, 538 F.3d 478, 505 (6th Cir. 2008); and *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010).  In all three cases, the Sixth Circuit declined to apply AEDPA deference on the ground that the state courts misconstrued the petitioner's claim. These decisions do not persuade the Court that AEDPA deference does not apply to the state court's rejection of the Due Process – Appellate Waiver claim here.

As an initial matter, the Sixth Circuit has questioned the continuing vitality of these decisions.  In *Smith*, the Sixth Circuit noted that *Campbell* and *Jells* "predate" the Supreme Court's 2013 *Johnson* decision underscoring the presumption of merits

48

adjudication afforded to state court decisions. *Smith*, 956 F.3d at 387.  And the Sixth Circuit stressed that *Campbell* and *Jells* are "hard to reconcile with *Johnson*'s healthy presumption of merits adjudication." *Id.*   The same appears to be true of *English*.  Indeed, none of those decisions even mentions, let alone grapples with, the presumption of merits adjudication outlined in *Johnson*.  Those decisions therefore do not lend strong support to Thomas' argument that the Court need not apply AEDPA deference here.

Moreover, all three decisions are distinguishable.  In *Campbell*, the petitioner "broadly claim[ed] that the trial court effectively prevented hi[m] from arguing voluntary intoxication [as a mitigating factor in the penalty phase of a death penalty trial]," but the Ohio Supreme Court narrowly viewed the claim as "merely" contending that the trial court "failed to give an instruction on voluntary intoxication." *Campbell*, 674 F.3d at 596.  In other words, the Ohio Supreme Court affirmatively and specifically mischaracterized the petitioner's claim.  The state trial court in this case did not do that.  The state court here first identified Thomas' claim that his "plea was illusory, involuntary and unknowing" and that he was therefore "denied" "due process of law[.]" (6.500 Denial Order, ECF No. 8-10, PageID.371). The court then concluded that there was "no error" in the plea proceedings. (*Id.*)  The explicit mischaracterization of the claim in *Campbell* did not occur here.

*Jells* likewise involved an affirmative mischaracterization of the petitioner's claim.  The petitioner in *Jells* asserted a *Brady* claim based on the prosecution's failure to provide exculpatory information "until *post-conviction." Jells*, 538 F.3d at 505 (6th Cir. 2008) (emphasis added).  The state appellate court, however, construed the petitioner's claim as one for failure to receive *Brady* information until after "the testimony of the witness on direct examination" – *i.e.*, *during trial*. *Id.* (quoting *State v. Jells*, 1998 WL 213175, at *10 (Ohio Ct. App. Apr. 30, 1998)).  Once again, the 6.500 Denial Order contained no such affirmative and specific mischaracterization of Thomas' claim.  Thus, *Jells* is distinguishable.

Finally, *English* is likewise not on point.  In *English*, the petitioner presented two ineffective assistance of counsel claims: one arising from a failure to investigate a witness and one arising from a failure to call a witness at trial. *See English*, 602 F.3d at 728.  However, the state court erroneously said that petitioner's failure to investigate claim merely "reiterate[d] his argument that trial counsel erred in not calling [the] witness." *People v. English*, 2004 WL 1292789, at *2 n.3 (Mich. Ct. App. June 10, 2004).  The Sixth Circuit reasoned that that conclusion by the state court was incorrect, that the claims were distinct, and that it would "thus afford no deference to the state court opinion as to this issue." *English*, 602 F.3d at 728.  Because this case involved no similar misstatement by the state trial court, *English* does not control.

**4**

For all of these reasons, the Court concludes that the state trial court adjudicated Thomas' Due Process – Appellate Waiver claim on the merits. Accordingly, the Court applies AEDPA deference to this claim.

**B**

The Court concludes that AEDPA precludes relief on Thomas' Due Process – Appellate Waiver claim because Thomas has not shown that the state court's rejection of that claim (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Thomas argues that the state court's rejection of his Due Process – Appellate Waiver claim cannot be squared with the line of Supreme Court decisions concerning the requirements for a valid guilty plea. First, in *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), the Supreme Court reiterated that in order to be valid, a guilty plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant." And second, in *Brady v. United States*, 397 U.S. 742, 755 (1970), the Supreme Court said that the "standard as to the voluntariness of guilty pleas must" include that the defendant be "fully aware of the direct consequences" of his plea. Thomas argues that the state trial court's rejection

51

of his Due Process – Appellate Waiver claim was contrary to, and/or an unreasonable application of *Alford* and *Brady* because the trial court found his plea to be valid even though (1) a direct consequence of his plea was that he waived the right on an appeal – even one by leave – to raise non-jurisdictional challenges to his conviction and (2) he was not advised of, and did not understand, that direct consequence.

Once again, Thomas' argument has some real force. It does seem fair to say that Thomas' waiver of his right to raise non-jurisdictional challenges to his conviction on appeal was a direct consequence of his guilty plea. And the record seems to support Thomas' contention that he was not aware of that consequence. At a minimum, the record is clear that he was not advised of that consequence.

Nonetheless, the Court is not convinced that Thomas is entitled to relief under the extremely deferential lens of AEDPA. First, the Supreme Court has never held that a defendant must understand *the particular direct consequence at issue here* – waiver of the right to raise non-jurisdictional challenges on appeal – in order to enter a knowing and voluntary guilty or no contest plea. Indeed, Thomas has not cited any Supreme Court decision concerning the validity of a plea that even mentions this consequence. In fact, Thomas has not cited a single decision from any court holding that in order for a guilty or no contest plea to be knowing and voluntary, a defendant must understand that he is waiving his right to raise non-jurisdictional challenges to his conviction on appeal.

Second, there is strong reason to believe that Supreme Court precedent does not clearly establish that a guilty or no contest plea is knowing and voluntary only if the defendant understands that the plea waives his right to raise non-jurisdictional challenges to his conviction on appeal.  Consider the practice in federal courts around the country.  In federal court, as in Michigan courts, a guilty or no contest plea generally waives a defendant's right to raise non-jurisdictional challenges to his conviction on appeal.[13]  Yet, in federal court, when a defendant enters a guilty or no contest plea, the district judge is not required to advise the defendant, nor to ensure that the defendant understands, that he is waiving that right. *See* Fed. R. Crim. P. 11(b)(1) (identifying advice that must be included plea colloquy).  That federal courts routinely accept pleas without ensuring that the defendant understands specifically that he is waiving his right to raise non-jurisdictional challenges on

---

[13] *See United States v. Farrar*, 876 F.3d 702, 713 (5th Cir. 2017) ("[A]n individual who enters a plea of *nolo contendere* waives all nonjurisdictional defects. Therefore, a criminal defendant who pleads nolo contendere is then limited to claiming that the indictment failed to state an offense, that the statute is unconstitutional or that the statute of limitations bars prosecution.") (internal citations and quotation marks omitted); *United States v. Heller*, 579 F.2d 990, 992 n.1 (6th Cir. 1978) ("[No contest pleas] waive[] non-jurisdictional defects to the conviction.").

appeal strongly suggests that Supreme Court precedent does not clearly establish that such knowledge is an essential requirement of a valid plea.[14]

For these reasons, the Court is not convinced that the state trial court's rejection of Thomas' Due Process – Appellate Waiver claim was an unreasonable application of, or contrary to, federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d).  Thus, the Court cannot grant relief on that claim.

## VI

For all of the reasons explained above, the Court concludes that Thomas is not entitled to relief on any of the claims raised in his petition.  Accordingly, the petition (ECF No. 1) is **DENIED**.

## VII

Before Thomas may appeal the Court's decision, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A district court may issue a certificate of appealability "only if the applicant has made a

---

[14] This practice of federal district courts, of course, does not conclusively prove that Supreme Court precedent does not clearly establish that in order to enter a valid guilty or no contest plea, a defendant must understand that he is waiving his right to raise non-jurisdictional challenges to his conviction.  It is at least possible that the federal district courts are contravening clearly established Supreme Court precedent. But that seems unlikely.  If existing Supreme Court precedent did *clearly establish* that a plea is valid only where a defendant understands that he is waiving all non-jurisdictional arguments on appeal, then one would expect that at least one court would have recognized that rule and/or that that rule would be reflected in the Federal Rules of Criminal Procedure.

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that [...] jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that Thomas has met these standards with respect to both the Court's merits decision and with respect to the Court's procedural ruling. Accordingly, the Court **GRANTS** Thomas a certificate of appealability with respect to all of his claims.

In addition, the Court **GRANTS** Thomas leave to appeal *in forma pauperis* because an appeal could be taken in good faith. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.

/s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 6, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 6, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126