UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC LAMONT THOMAS,

          Petitioner,                         Case No. 19-cv-12775
                                                       Hon. Matthew F. Leitman

v.

S.L. BURT,

          Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION
FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) GRANTING
A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING
LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Eric Lamont Thomas is a state inmate in the custody of the Michigan Department of Corrections.  In 2014, Thomas pleaded no contest to a charge of first-degree criminal sexual conduct in the Wayne County Circuit Court. On September 23, 2019, Thomas filed a petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.)  Thomas asserted eight claims in the petition.  In an Opinion and Order dated September 6, 2022, the Court denied the petition. (*See* Op. and Order, ECF No. 31.)  The Court concluded that all but one of the claims were procedurally defaulted. (*See id.,* PageID.946-956.)  The Court then determined that the non-defaulted claim was subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because the state court had decided the claim

1

on the merits. (*See id.*, PageID.957-964.)  Finally, the Court held that Thomas was not entitled to a writ of habeas corpus on his non-defaulted claim because he could not satisfy the requirements for relief under AEDPA. (*See id.*, PageID.964-967.)

The Sixth Circuit thereafter affirmed the Court's decision in part and reversed it in part. *See Thomas v. Burt*, No. 22-1802, 2023 WL 5447379, at *10 (6th Cir. Aug. 24, 2023).  More specifically, the Sixth Circuit affirmed the denial of relief on the one claim that this Court determined to be non-defaulted and reviewed on the merits, and it reversed this Court's ruling that the other claims had been procedurally defaulted. *See id.*  The case is now back before this Court on remand for further consideration of the claims that the Court previously found to be defaulted.

Two sets of claims are now before the Court.  In Thomas' first set of claims, he contends that the entry of his no-contest plea violated his due process rights because the plea conferred no benefit on him and because he was unaware of his sentencing exposure at the time he entered the plea.  In his second set of claims, Thomas contends that he was deprived of the effective assistance of counsel in connection with the entry of his plea.  More specifically, Thomas claims that his trial counsel did not correctly advise him about his sentencing exposure, failed to advise him that his plea conferred no benefit on him, and failed to advise him that his plea waived his right to appeal non-jurisdictional defects in the proceedings.

2

For the reasons explained below, the Court concludes it must review all of the remaining claims under AEDPA and that Thomas has failed to satisfy the requirements for relief under AEDPA.  Accordingly, the Court **DENIES** Thomas' petition.  However, the Court **GRANTS** Thomas a certificate of appealability on all of his claims, and it **GRANTS** him leave to appeal *in forma pauperis*.

## I

The Court provided a detailed summary of the facts and procedural history of this case in its prior Opinion and Order. (*See* Op. and Order, ECF No. 31, PageID.915-946.)  The Court sets forth below a shorter recitation of the facts and history relevant to the remaining claims.

## A

The charges against Thomas and his co-defendant arose from a home invasion and sexual assault that occurred nearly two decades prior to the prosecution.  Thomas was originally charged with multiple offenses, but at the time of trial, Thomas faced only one remaining count of first-degree criminal sexual conduct. (*See* 9/5/2014 Tr., ECF No. 8-3, PageID.200-204.)

At a September 5, 2014, pre-trial hearing, Thomas' trial counsel said on the record that the prosecutor had made a plea offer under which Thomas would be sentenced to "eight to twenty-five" years. (*See id.*, PageID.197.)  Thomas declined that offer. (*See id.*, PageID.197-198.)  The state trial court thereafter inquired about

Thomas' potential sentencing exposure. (*See id.*, PageID.198.)   The prosecutor

responded that if Thomas was convicted at trial, the sentencing guidelines would call

for a minimum term of imprisonment that fell within one of two possible ranges,

either 96-240 months or 120-300 months.[1] (*See id.*)   The prosecutor then said that if

the prosecution prevailed at trial, he would seek "something towards the top end of

the guidelines" and would be "looking at a minimum [sentence] of twenty [years]

on the bottom" and a maximum term of fifty years. (*Id.*, PageID.199.)   Thomas

confirmed that he was rejecting the plea offer. (*See id.*, PageID.200.)

## B

Thomas' trial began eleven days later, on September 16, 2014.   During jury

selection, it was revealed that Thomas' co-defendant had just pleaded guilty, that the

---

[1] Unlike federal courts – which impose a sentence for a fixed period of time – "a sentence imposed in Michigan is [almost always] an indeterminate sentence" that includes both a minimum and maximum. *People v. Drohan*, 715 N.W.2d 778, 790 (Mich. 2006), *overruled in part on other grounds*, *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).   Michigan's Sentencing Guidelines provide a range for determining a defendant's *minimum sentence. See People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003).   The guidelines play no role in determining a defendant's *maximum sentence*. *See id.*   The maximum sentence is set by statute. *See Drohan*, 715 N.W.2d at 790.   At the time of Thomas' sentencing, Michigan's sentencing guidelines were "mandatory," meaning that trial courts were required to impose a minimum sentence within the guidelines range unless they found "substantial and compelling reasons" to depart from the guidelines. Mich. Comp. Laws § 769.34(3); *Babcock*, 666 N.W.2d at 236.   Once a defendant serves his minimum sentence, he becomes eligible for parole, and the Michigan Parole Board determines whether to release him prior to the expiration of his maximum term. *See* Mich. Comp. Laws § 791.234(1).

co-defendant had made a statement to police implicating Thomas, and that the co-defendant would testify at Thomas' trial. (*See* 9/16/2014 Tr., ECF No. 8-4, PageID.270-271.)

Thomas' counsel then moved for a mistrial or to bar the co-defendant from testifying. Counsel argued that he did not have sufficient time to have the co-defendant interviewed by his investigator. (*See id.*, PageID.270-272.)  Counsel also asserted that the prosecutor had committed a *Brady* violation, *see Brady v. Maryland*, 373 U.S. 83 (1963), and that there had been a "secret agreement" between the prosecution and the co-defendant. (*See* 9/16/2024 Tr., ECF No. 8-4, PageID.278-280.)  The state trial court denied the motions and ruled that the co-defendant would be allowed to testify against Thomas at trial. (*See id.*, PageID.281.)  The case was then briefly adjourned to give Thomas' counsel an opportunity to call his investigator and arrange for the co-defendant to be interviewed. (*See id.*, PageID.282-283.)

## C

When the case was recalled, Thomas' counsel announced that Thomas was going to offer a plea of no contest. (*See id.*, PageID.283.)

Thomas was placed under oath and confirmed that he wished to plead no contest to the first-degree criminal sexual conduct charge. (*See id.*, PageID.284-

285.)  Thomas further indicated that he understood a no contest plea was the same as a guilty plea. (*See id*.)

The state trial court noted that the parties had submitted a "Pretrial Settlement Offer and Notice of Acceptance" form (the "Plea Form"). (*See id*., PageID.285.) The one-page Plea Form listed one count – "CSC 1" – *i.e.*, criminal sexual conduct in the first degree. (Plea Form, ECF No. 26-2, PageID.883.)  It also listed the "STATUTORY MAXIMUM PENALTY" as "Life." (*Id*.)  The box for "[n]o charge reduction" was marked with an "X," and the boxes for "Sentence Agreement," "Agree to Guideline Sentence," and "Sentence Recommendation," were all left blank. (*Id*.)  Finally, the box for "[p]eople agree to withdraw notice to enhance sentence" was marked with an "X," but the prosecutor explained to the state trial court that the withdrawal of that notice "was not part of" any agreement. (9/16/2014 Tr., ECF No. 8-4, PageID.292.)  The prosecutor said that, instead, he was withdrawing the sentence enhancement notice due to issues concerning the statute of limitations. (*See id*., PageID.292-293.)  At the bottom of the Plea Form, Thomas waived his trial rights and his "right to appeal as of right as to conviction and sentence." (Plea Form, ECF No. 26-2, PageID.883.)  Thomas and his trial counsel both signed the Plea Form. (*See id*.)

Thomas confirmed to the state trial court that he had an opportunity to read the Plea Form, that he reviewed it with his trial counsel, and that he had signed the

form. (*See* 9/16/2014 Tr. ECF No. 8-4, PageID.285.)  Thomas said that he did not

have any questions about the Plea Form or the no contest plea. (*See id*., PageID.285-

286.)

The state trial court then explained that the statutory maximum penalty for

first-degree criminal sexual conduct was life in prison, and Thomas indicated his

understanding. (*See id*.)  The court then asked Thomas if, "[k]nowing all of those

things," he wished to plead no contest, and Thomas answered affirmatively. (*Id*.)

The court then advised Thomas of all of the trial rights that he would be waiving by

entering his plea. (*See id*., PageID.287-288.)

Turning to Thomas' appellate rights, the state trial court asked Thomas

whether he understood that he was "giving up [his] right to an automatic right of

appeal." (*Id*., PageID.288.)  Thomas asked if the court meant that "once this is over

with . . . I can't appeal this case?" (*Id*.)  The court responded, "[w]ell, you don't have

an automatic right to it, but you could ask for leave to appeal, but you don't have an

automatic right to appeal." (*Id*.)   Thomas' counsel then briefly conferred with

Thomas, after which counsel indicated that Thomas understood that he was giving

up his right to an "automatic right of appeal." (*Id*., PageID.288-289.)

In response to further questioning from the state trial court, Thomas denied

that anyone had "threatened [him] or promised [him] or coerced [him] in order to

enter into this no contest plea other than what has already been listed on the record."

(*Id*., PageID.289.)  Thomas further acknowledged that he would not be able to "come back later and claim [he was] threatened or promised or coerced in order to enter into this no contest plea." (*Id*.)  Thomas also said that it was his own choice to enter the plea. (*See id*.)  Thomas agreed that he was entering the plea "knowingly, intelligently, voluntarily, understand[ingly], and accurately." (*Id*.)

Thomas' counsel and the prosecutor likewise agreed that there were no "promises, threats, or inducements that [had] not been disclosed on the record," that the court "complied with the Michigan Court Rules, including Michigan Court Rule 6.302 b through d," and that "the plea [was] knowingly, intelligently, voluntarily, understand[ingly], and accurately entered into[.]" (*Id*., PageID.293.) The state trial court then found that Thomas entered his plea knowingly, intelligently, voluntarily, understandingly, and accurately. (*See id*., PageID.293.)

### D

The parties appeared before the state trial court for sentencing on October 14, 2014.  At that proceeding, the parties agreed that the guidelines called for a minimum term of "180 to 360 [months] or life." (10/14/2014 Tr., ECF No. 8-6, PageID.307.) This range was higher than the two possible minimum guidelines ranges previously identified by the prosecutor during the pre-trial hearing on September 5, 2014. (*See* 9/5/2014 Tr., ECF No. 8-3, PageID.198.)

The prosecutor and victim asked for a sentence at "the top of the guidelines." (10/14/2014 Tr., ECF No. 8-6, PageID.312-313.)  Thomas' trial counsel requested a sentence at the bottom of the guidelines. (*See id*.)  He said that such a sentence was warranted because Thomas' plea had spared the victim from having to testify. (*See id*.)

The state trial court then asked Thomas if he wanted to say anything. Thomas responded "Nothing. I plea[d] no contest. I just – I don't have nothing to say. I mean it's a bunch of violations in this case and I'll just, I'm going to come back on appeal." (*Id*., PageID.314.)

The state trial court sentenced Thomas "to 280 months minimum to a maximum of 700 months with the Michigan Department of Corrections." (*Id*.)

## E

On April 9, 2015, Thomas filed a *pro se* motion in the state trial court to withdraw his plea. (*See* Mot. to Withdraw, ECF No. 8-11.)  Thomas asserted that his plea did not comply with the Due Process Clause because it was not a knowing and voluntary plea. (*See id*., PageID.392-395.)  More specifically, he contended that the plea was invalid because he did not know that it would prevent him from raising non-jurisdictional issues on appeal.  Thomas asserted in an affidavit that "[a]t the time of [his] no contest plea," he "believed" that he "could appeal issues related to the investigation of [his] case, [his] rights to a speedy trial, *[a B]rady* violation,

prosecutorial misconduct, sentencing, ineffective assistance of counsel, and other issues [he] believed were present in [his] case." (Thomas Aff. at ¶¶ 3-4, ECF No. 8-11, PageID.398.[2])  Thomas stated that prior to entering his plea, his trial counsel did not tell him whether he would be able to appeal those issues. (*See id.* at ¶ 3.)

Thomas asserted that he was "confused" by the state trial court's explanation at his plea hearing that there was a "difference between an application for leave to appeal[] and a[n] appeal by right," and that "it was reasonable for [him] to interpret [the trial court's colloquy] to mean that he could appeal the issues mentioned above" even if only by leave. (Mot. to Withdraw, ECF No. 8-11, PageID.394.) Thomas insisted that if he had "known that [he] could not appeal [those] issues, [he] would not have pleaded no contest" and, instead "would have insisted on going to trial[.]" (Thomas Aff. at ¶ 5, ECF No. 8-11, PageID.398.)

Thomas did not contend in his motion to withdraw his plea that his plea was invalid on the basis that he did not understand, or had been erroneously advised about, his sentencing exposure under the Michigan sentencing guidelines.  In fact, neither Thomas' motion nor his affidavit said anything about sentencing issues.

The state trial court appointed counsel to represent Thomas in connection with his motion to withdraw his plea.  The court then held a hearing on the motion. (*See*

---

[2] Under Michigan law, a defendant who pleads guilty or no contest waives the right to appeal, even by leave, any non-jurisdictional defects. *See, e.g., People v. New*, 398 N.W.2d 358, 363 (Mich. 1986).

6/4/2015 Hr'g Tr., ECF No. 8-8.)  Thomas and his appointed counsel both spoke at the hearing.  Thomas insisted that he "would have never [taken] this plea if [he] would have had the right advice." (*Id.*, PageID.329.)  Neither Thomas nor his appointed counsel said anything at the hearing related to Thomas' sentence.

The state trial court denied Thomas' motion to withdraw his plea.  The court found that the motion was both "untimely" and "frivolous" because Thomas was informed that he was waiving his right to an appeal by right at the plea hearing. (*Id.*, PageID.336-337.)

## F

Thomas, through appointed appellate counsel, filed a delayed application for leave to appeal in the Michigan Court of Appeals in which he again argued that his plea was invalid because the state trial court failed to inform him that his plea waived his right to appeal non-jurisdictional issues. (*See* Mich. Ct. App. Appl., ECF No. 8-11, PageID.375-389.)  And he again argued that his plea did not comply with the requirements under the Fourteenth Amendment. (*See id.*, PageID.388.)   The Michigan Court of Appeals entered an order denying the delayed application "for lack of merit in the grounds presented" (the "2015 COA Denial Order"). (2015 COA Denial Order, ECF No. 8-11, PageID.424.)

Thomas appealed the 2015 COA Denial Order to the Michigan Supreme Court (*see* Mich. Sup. Ct. Appl., ECF No. 8-12, PageID.504), but that court denied leave

to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." (Mich. Sup. Ct. Order, ECF No. 8-12, PageID.503.)

## G

On June 29, 2017, Thomas returned to the state trial court and filed a *pro se* motion for relief from judgment under Rule 6.500 of the Michigan Court Rules (the "6.500 Motion"). (*See* 6.500 Mot., ECF No. 8-9.)  The 6.500 Motion presented the following claims:

ISSUE I

WAS DEFENDANT THOMAS DENIED HIS FOURTEENTH, SIXTH, AND FIFTH AMENDMENT CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL, AND IS ENTITLED TO WITHDRAW HIS GUILTY PLEA / NOLO CONTENDERE PLEA, WHERE HIS PLEA WAS ILLUSORY, INVOLUNTARY, AND UNKNOWING, WHERE THE PLEA PROVIDED NO BENEFIT TO DEFENDANT, IS AN UNCONSCIONABLE CONTRACT, AND UNENFORCEABLE[?]

ISSUE II

WAS DEFENDANT THOMAS DEPRIVED OF HIS LIBERTY AND THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL WRONGFULLY ADVISED THE DEFENDANT TO PLEAD GUILTY TO AN ILLUSORY PLEA, WHERE THERE WAS NO BENEFIT TO THE DEFENDANT IN TAKING THE PLEA, AND WHERE THE DEFENDANT UNKNOWINGLY WAIVED HIS CONSTITUTIONALLY PROTECTED RIGHTS TO AN APPEAL OF RIGHT[?]

(*Id.*, PageID.344.)

The state trial court denied the 6.500 Motion in an order dated March 9, 2018 (the "6.500 Denial Order"). (*See* 6.500 Denial Order, ECF No. 8-10.)  The trial court ruled that Thomas was not entitled to relief because there had been "no error attributed to trial counsel, or the Court[,] in the course of Defendant's plea and sentencing proceedings." (*Id.*, PageID.371.)  The Court will provide additional details about the 6.500 Denial Order below.

## H

Thomas then filed a *pro se* application for leave to appeal from the 6.500 Denial Order in the Michigan Court of Appeals. (*See* Mich. Ct. App. Appl., ECF No. 8-13, PageID.580-609.)  In that application, he raised the same claims that he had presented to the state trial court in the 6.500 Motion. (*See id.*, PageID.584.)

The Michigan Court of Appeals denied leave to appeal on the basis that Thomas "failed to establish that the trial court erred in denying the motion for relief from judgment" (the "COA 2017 Denial Order"). (COA 2017 Denial Order, ECF No. 8-13, PageID.573.)

## I

Thomas next filed a *pro se* application for leave to appeal in the Michigan Supreme Court. (*See* Mich. Sup. Ct. Appl., ECF No. 8-14, PageID.628-656.)  He again asserted the claims that he had presented to the state trial court in the 6.500 Motion. (*See id.*)  The Michigan Supreme Court denied leave to appeal on the ground

that Thomas "failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." (Mich. Sup. Ct. Order, ECF No. 8-14, PageID.671.)

## J

On September 23, 2019, Thomas filed his federal habeas petition in this Court. (*See* Pet., ECF No. 1.)  The petition presented eight claims. (*See id.*)  During the course of these proceedings, counsel for both parties and the Court have identified and labeled the claims as follows:

1. **Due Process—Illusory Plea**: Thomas' plea violated his due process rights because he entered the plea pursuant to an agreement that conferred no benefit upon him.

2. **Due Process—Sentencing Exposure**: Thomas' plea violated his due process rights because Thomas was unaware of his sentencing exposure when he pleaded no contest.

3. **Due Process—Appellate Waiver**: Thomas' plea violated his due process rights because Thomas did not understand that the plea waived his right to appeal non-jurisdictional defects that occurred before he entered his plea.

4. **Ineffective Assistance of Trial Counsel—Illusory Plea**: Thomas' trial counsel provided ineffective representation when he failed to explain to Thomas that his plea agreement and no contest plea offered him no benefit.

5. **Ineffective Assistance of Trial Counsel—Sentencing Range**: Thomas' trial counsel provided ineffective representation when he failed to advise Thomas that his no contest plea would result in a mandatory sentencing guidelines range that was above what the prosecutor stated he would seek after a trial.

6. **Ineffective Assistance of Trial Counsel—Appeal Waiver**: Thomas' trial counsel provided deficient representation when he failed to explain to Thomas that Thomas' no contest plea prevented him from raising on appeal non-jurisdictional defects that occurred before he entered his plea.

7. **Ineffective Assistance of Appellate Counsel—Failure to Raise Due Process Challenges**: Thomas' appellate counsel provided deficient representation when he failed to raise on appeal certain due process challenges to the entry Thomas' plea.

8. **Ineffective Assistance of Appellate Counsel—Failure to Raise Ineffective Assistance of Trial Counsel**: Thomas' appellate counsel provided deficient representation when he failed to assert claims of ineffective assistance of trial counsel in his appeal challenging the denial of Thomas' motion to withdraw his plea.[3]

On September 6, 2022, the Court issued an Opinion and Order denying the petition. (*See* Op. and Order, ECF No. 31.)  The Court first ruled that all of Thomas' claims other than the Due Process – Appellate Waiver claim had been procedurally defaulted. (*See id.*, PageID.946-956.)  The Court then turned to the Due Process – Appellate Waiver claim.  The Court determined that the state trial court had decided that claim on the merits in the 6.500 Denial Order and that the claim was therefore subject to review under AEDPA. (*See id.*, PageID.957-964.)   The Court then concluded that Thomas was not entitled to relief on the claim because he had failed to show that the state trial court's rejection of the claim was contrary to, or involved

---

[3] The Sixth Circuit likewise referred to Thomas' claims in this manner in his earlier appeal. *See Thomas v. Burt*, No. 22-1802, 2023 WL 5447379, at *3–4 (6th Cir. Aug. 24, 2023).

an unreasonable application of, clearly established federal law. (*See id.*, PageID.964-967.)  Although the Court denied the petition, the Court did grant Thomas a certificate of appealability, and he subsequently appealed.

The Sixth Circuit thereafter affirmed in part and reversed in part.  The Sixth Circuit affirmed this Court's denial of relief on the Due Process – Appellate Waiver Claim and reversed this Court's ruling that Thomas had procedurally defaulted all of his other claims. *See Thomas*, 2023 WL 5447379, at *5–10.  The Sixth Circuit then remanded for consideration of all of the claims that this Court had found to be defaulted. *See id.* at *10.  The Sixth Circuit indicated, however, that this Court did not need to address the claims for ineffective assistance of appellate counsel because they were presented solely to excuse any procedural defect. *See id.* at *7.

In the end, the Sixth Circuit's decision returned the following claims to this Court: (1) Due Process – Illusory Plea; (2) Due Process – Sentencing Exposure; (3) Ineffective Assistance of Trial Counsel – Illusory Plea; (4) Ineffective Assistance of Trial Counsel – Sentencing Range; and (5) Ineffective Assistance of Trial Counsel – Appeal Waiver.

## K

On remand, the parties filed a round of supplemental briefing addressing whether the remaining claims are subject to review under AEDPA. (*See* Supp. Brs., ECF Nos. 39, 41, 42.)  The Court also conducted another hearing to address the

16

remaining claims. (*See* 10/30/2024 Hr'g Tr., ECF No. 46.)  The Court is now prepared to rule on those claims.

## II

The threshold question that the Court must resolve is: are Thomas' remaining claims subject to review under AEDPA, or may the Court review them *de novo*?  If the state courts decided the claims on the merits, then this Court must review them under AEDPA; if not, the Court may review them *de novo*.

Given the procedural history of this case, determining whether the state courts adjudicated the remaining claims on the merits is no easy task.  The Court has done its best to sort through that history, and for the reasons explained below, the Court is constrained to conclude that the state courts did decide all of the remaining claims on the merits and that the claims must therefore be reviewed under AEDPA.

## A

Thomas presented his remaining claims in the 6.500 Motion, and three state courts issued orders in the 6.500 proceedings: the state trial court (which issued the 6.500 Denial Order), the Michigan Court of Appeals (which issued the COA 2017 Denial Order), and the Michigan Supreme Court (which denied leave to appeal in an order dated July 29, 2019).  At least one of those orders decided the claims on the merits.

17

**B**

The Court begins with the orders entered by the Michigan Supreme Court and the Michigan Court of Appeals in the 6.500 appeal proceedings.  When this case was before the Sixth Circuit, that court said that both of those orders were decisions on the merits: "Here, the orders of both the Michigan Court of Appeals and Michigan Supreme Court that denied Thomas leave to appeal the denial of his 6.500 motion were unexplained orders that were nevertheless based on lack of merit. Therefore, the presumption of a determination on the merits applies to those orders." *Thomas*, 2023 WL 5447379, at *8.  Under the law of the case doctrine, that conclusion by the Sixth Circuit would seem to be dispositive and to compel the Court to conclude that all of the remaining claims – which, again, were presented only in the state trial court and appellate proceedings related to the 6.500 Motion – were adjudicated on the merits. *See Jones v. Cassens Transp.*, 982 F.2d 983, 987 (6th Cir. 1993) ("It is clear that when a case has been remanded, the trial court must upon remand proceed in accordance with the mandate and the law of the case as established by the appellate court. This is known as the law of case doctrine and operates to preclude reconsideration of identical issues." (quoting *Petition of U.S. Steel Corp.*, 479 F.2d 489, 493–94 (6th Cir. 1973))).

However, the Sixth Circuit's conclusion that the orders entered in the 6.500 appeal proceedings were merits determinations appears to create some confusion in

at least two respects.  First, it is not clear why the Sixth Circuit undertook to decide whether the orders in the 6.500 appeal proceedings were decisions on the merits. The Sixth Circuit was reviewing Thomas' Due Process – Appellate Waiver claim, and that claim was not presented or decided in the 6.500 appeal proceedings. Instead, Thomas raised that claim "on direct appeal in the Michigan Court of Appeals and Supreme Court," and during those direct appeal proceedings, the Michigan Court of Appeals denied leave to appeal for "'lack of merit in the grounds presented.'" *Thomas,* 2023 WL 5447379, at *3–4 (quoting COA 2017 Denial Order).  Because the Due Process – Appellate Waiver claim was resolved on the merits during Thomas' direct appeal, it may, perhaps, be the case that the Sixth Circuit meant to refer to those direct appeal proceedings, rather than the 6.500 appeal proceedings, when assessing whether the claim was decided on the merits.[4]  If that is the case, then the Sixth Circuit's determination that the orders in the 6.500 appeal proceedings were rulings on the merits may not be binding on this Court.

Second, the Sixth Circuit's determination that the orders entered by the Michigan appellate courts in the 6.500 appeal proceedings were merits rulings would seem to conflict with the Sixth Circuit's prior published decisions.  As noted above,

---

[4] Like the Sixth Circuit, this Court looked to the orders entered in the 6.500 appeal proceedings, rather than those issued during Thomas' direct appeal, to determine whether the Due Process – Appellate Waiver claim had been decided on the merits. This Court believes that it erred in that regard and that its error may have contributed to the Sixth Circuit's focus on the orders entered in the 6.500 appeal proceedings.

the Michigan Court of Appeals denied leave to appeal from the 6.500 Denial Order on the ground that Thomas "failed to establish that the trial court erred in denying the motion for relief from judgment" (COA 2017 Denial Order, ECF No. 8-13, PageID.573), and the Sixth Circuit has previously declined to treat orders using that same language as merits rulings. Instead, it has looked through those orders to the underlying trial court orders denying relief from judgment to determine whether there had been a merits adjudication. *See, e.g., Moss v. Miniard*, 62 F.4th 1002, 1011 (6th Cir. 2023) (reviewing state trial court order to determine whether claim had been adjudicated on the merits where Michigan Court of Appeals denied leave to appeal on ground that the defendant had "failed to establish that the trial court erred in denying the motion for relief from judgment"[5]). Likewise, in the 6.500 appeal proceedings, the Michigan Supreme Court denied leave to appeal on the ground that Thomas "failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)" (Mich. Sup. Ct. Order, ECF No. 8-14, PageID.671), and the Sixth Circuit has also looked through orders using that same language when determining whether a claim had been adjudicated on the merits. *See Moss*, 62 F.4th at 1011 (looking to trial court order to determine whether claim had

---

[5] The Sixth Circuit did not quote the Michigan Court of Appeals order in its decision. The text of that order appears in this Court's docket at *Moss v. Miniard*, E.D. Mich. Case No. 18-cv-11697, Dkt. No. 5-13, PageID.1099.

been adjudicated on the merits where Michigan Supreme Court denied leave on ground that the defendant "failed to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)")[6]; *Stermer v. Warren*, 959 F.3d 704, 722–24 (6th Cir. 2020) (same).[7]  The apparent tension between the Sixth Circuit's prior published rulings and its determination that the orders of the Michigan appellate courts in the 6.500 appeal proceedings were merits rulings may raise some additional questions as to whether the law of the case compels this Court to treat the appellate orders as merits rulings.

In the end, even though there would appear to be questions concerning the proper application of the law of the case doctrine here, the Court feels compelled to adhere to the Sixth Circuit's clear statement that the orders entered by the Michigan Supreme Court and Michigan Court of Appeals in the 6.500 appeal proceedings were merits rulings.  That determination by the Sixth Circuit requires the Court to review all of Thomas' remaining claims under AEDPA.

---

[6] The Sixth Circuit did not quote the Michigan Supreme Court order in its decision. The text of that order appears in this Court's docket at *Moss v. Miniard*, E.D. Mich. Case No. 18-cv-11697, Dkt. No. 5-15, PageID.1384.

[7] The Sixth Circuit did not quote the Michigan Supreme Court order in its decision. The text of that order appears in this Court's docket at *Stermer v. Warren*, E.D. Mich. Case No. 12-cv-14013, Dkt. 24-19, PageID.2207.

## C

Even if the law of the case doctrine did not compel the Court to conclude that the remaining claims were decided on the merits by the Michigan appellate courts, the Court would still conclude for the reasons explained below that the claims were resolved on the merits – by the state trial court in the 6.500 Denial Order.

The Court's analysis of whether the state trial court adjudicated the remaining claims on the merits must begin with the "healthy presumption" that the state trial court did so. *Smith v. Cook*, 956 F.3d 377, 387 (6th Cir. 2020).  That presumption "prevails even when the state court's opinion wholly omits," "imperfectly discusses," or fails to "overtly grapple[] with the 'crux'" of a petitioner's claim. *Id.* at 386.  "To rebut [the] presumption, the petitioner must show 'very clearly' that the state court overlooked his claim." *Rogers v. Mays*, 69 F.4th 381, 388 (6th Cir. 2023) (quoting *Johnson v. Williams*, 568 U.S. 289, 303 (2013)).

Here, determining whether the state trial court decided Thomas' remaining claims on the merits is challenging because the 6.500 Denial Order is not a model of clarity, offers no specific analysis of any of Thomas' separate claims, and focuses, at least to some degree, on matters that were not even raised in the 6.500 Motion. However, when the Court reviews the language and structure of the 6.500 Denial Order through the lens of the required presumption, the Court must conclude that the state trial court decided Thomas' remaining claims on the merits.

To begin, early in the 6.500 Denial Order, the state trial court expressly acknowledged all of the claims that Thomas presented in the 6.500 Motion – by quoting verbatim the argument headings in the 6.500 Motion. (*See* 6.500 Denial Order, ECF No. 8-10, PageID.370-371.)  The court next recognized that "a plea of guilty or *nolo contendere*" must be "understanding, voluntary, and accurate." (*Id.*, PageID.371.)  The court then found "no error attributed to trial counsel, or the Court[,] in the course of Defendant's plea and sentencing proceedings," and it thereafter repeated that it found "no defect in the plea proceedings that would necessitate a new trial." (*Id.*)  On this record – where the state trial court (1) acknowledged Thomas' ineffective assistance and due process claims and then (2) found no error by counsel or the court and that the plea was understanding, voluntary, and accurate – this Court must conclude that the state trial court adjudicated Thomas' claims on the merits.

Thomas responds that the 6.500 Denial Order should not be treated as a merits adjudication because the state trial court overlooked and/or misconstrued his claims. (*See* Pet'r Supp. Br., ECF No. 39, PageID.1003.)  This is a serious argument.  Indeed, as noted above, the state trial court said little, if anything, about the specifics of any of Thomas' claims.  And the state trial court focused, in part, on matters that Thomas did not advance as grounds for relief in the 6.500 Motion, such as whether there was a sufficient factual basis for his plea and whether he was advised that he would be

subject to lifetime tether monitoring. (*See id.*, PageID.371-372.)  Notwithstanding these shortcomings in the 6.500 Denial Order, the Court is still compelled to conclude that the state trial court adjudicated Thomas' claims on the merits.

This Court explained why in its prior Opinion and Order. (*See* Op. and Order, ECF No. 31.)  In that ruling, the Court addressed Thomas' argument that the state trial court had not adjudicated his Due Process – Appellate Waiver claim on the merits in the 6.500 Denial Order.  The Court reluctantly rejected that argument.  And the Court's reasons for rejecting that argument are fully applicable to Thomas' current argument that the state trial court did not adjudicate his remaining claims on the merits because it overlooked and/or misconstrued them.  The Court therefore restates and adopts its prior analysis here:

> Thomas' argument has real logical force.  Courts often address – even if briefly – issues that they intend to decide on the merits.  And where, as here, a defendant presents two arguments and a court expressly discusses only one of them, it is not illogical to conclude that the court may have overlooked the argument omitted from its discussion.  However, Thomas' logical arguments are not enough to overcome the presumption that the state court decided the Due Process – Appellate Waiver claim on the merits.  In *Smith*, the Sixth Circuit underscored that "[t]he Supreme Court has cautioned [] that petitioners will rarely be able to overcome the presumption of merits adjudication." *Smith,* 956 F.3d at 386 (citing *Johnson v. Williams*, 568 U.S. 289, 301 (2013)).  And the Supreme Court has held that the presumption even applies "when a state-court opinion addresses some but not all of a defendant's claims." *Johnson,* 568 U.S. at 298.  Here, while the state court could have indicated more clearly that it was

adjudicating the Due Process – Appellate Waiver claim on the merits, the Court cannot conclude, when viewing the 6.500 Denial Order through the lens of the presumption of adjudication, that the state court misconstrued the claim and failed to decide it on the merits.

\*\*\*

Thomas also cites a trio of Sixth Circuit decisions that, he says, support his contention that the state trial court misconstrued the Due Process – Appellate Waiver claim and that the claim is therefore not subject to AEDPA deference.  Those decisions are: *Campbell v. Bradshaw*, 674 F.3d 578, 596 (6th Cir. 2012); *Jells v. Mitchell*, 538 F.3d 478, 505 (6th Cir. 2008); and *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010).  In all three cases, the Sixth Circuit declined to apply AEDPA deference on the ground that the state courts misconstrued the petitioner's claim. These decisions do not persuade the Court that AEDPA deference does not apply to the state court's rejection of the Due Process – Appellate Waiver claim here.

As an initial matter, the Sixth Circuit has questioned the continuing vitality of these decisions.  In *Smith*, the Sixth Circuit noted that *Campbell* and *Jells* "predate" the Supreme Court's 2013 *Johnson* decision underscoring the presumption of merits adjudication afforded to state court decisions. *Smith*, 956 F.3d at 387.  And the Sixth Circuit stressed that *Campbell* and *Jells* are "hard to reconcile with *Johnson*'s healthy presumption of merits adjudication." *Id.*  The same appears to be true of *English*. Indeed, none of those decisions even mentions, let alone grapples with, the presumption of merits adjudication outlined in *Johnson*.  Those decisions therefore do not lend strong support to Thomas' argument that the Court need not apply AEDPA deference here.

Moreover, all three decisions are distinguishable.  In *Campbell*, the petitioner "broadly claim[ed] that the trial

court effectively prevented hi[m] from arguing voluntary intoxication [as a mitigating factor in the penalty phase of a death penalty trial]," but the Ohio Supreme Court narrowly viewed the claim as "merely" contending that the trial court "failed to give an instruction on voluntary intoxication." *Campbell*, 674 F.3d at 596. In other words, the Ohio Supreme Court affirmatively and specifically mischaracterized the petitioner's claim. The state trial court in this case did not do that. The state court here first identified Thomas' claim that his "plea was illusory, involuntary and unknowing" and that he was therefore "denied" "due process of law[.]" (6.500 Denial Order, ECF No. 8-10, PageID.371). The court then concluded that there was "no error" in the plea proceedings. (*Id.*) The explicit mischaracterization of the claim in *Campbell* did not occur here.

*Jells* likewise involved an affirmative mischaracterization of the petitioner's claim. The petitioner in *Jells* asserted a *Brady* claim based on the prosecution's failure to provide exculpatory information "until *post-conviction." Jells*, 538 F.3d at 505 (6th Cir. 2008) (emphasis added). The state appellate court, however, construed the petitioner's claim as one for failure to receive *Brady* information until after "the testimony of the witness on direct examination" – *i.e.*, *during trial*. *Id.* (quoting *State v. Jells*, 1998 WL 213175, at *10 (Ohio Ct. App. Apr. 30, 1998)). Once again, the 6.500 Denial Order contained no such affirmative and specific mischaracterization of Thomas' claim. Thus, *Jells* is distinguishable.

Finally, *English* is likewise not on point. In *English*, the petitioner presented two ineffective assistance of counsel claims: one arising from a failure to investigate a witness and one arising from a failure to call a witness at trial. *See English*, 602 F.3d at 728. However, the state court erroneously said that petitioner's failure to investigate claim merely "reiterate[d] his argument that trial counsel erred in not calling [the] witness." *People v. English*, 2004 WL 1292789, at *2 n.3 (Mich. Ct. App. June 10, 2004).

> The Sixth Circuit reasoned that that conclusion by the state
> court was incorrect, that the claims were distinct, and that
> it would "thus afford no deference to the state court
> opinion as to this issue." *English*, 602 F.3d at 728.
> Because this case involved no similar misstatement by the
> state trial court, *English* does not control.

(*Id.*, PageID.960-963; internal footnote omitted.)

This same line of reasoning compels the Court to conclude that the state trial

court did not overlook or misunderstand any of Thomas' remaining claims. While

the state trial court certainly could have stated more clearly that it was resolving

Thomas' claims on the merits and could have offered a much clearer independent

analysis of each claim, for all of the reasons set forth by this Court in its earlier

Opinion and Order, the Court again cannot conclude, when reviewing the 6.500

Denial Order through the lens of the governing presumption, that the state trial court

overlooked and/or misconstrued any of the claims in the 6.500 Motion.

Notably, an *en banc* decision of the Sixth Circuit issued after the Court entered

its earlier Opinion and Order confirms that Thomas should not prevail on his

argument that the 6.500 Denial Order was not an adjudication on the merits because

the state trial court overlooked and/or misunderstood his claims. In *Rogers v. Mays*,

69 F.4th 381, 389 (6th Cir. 2023), the Sixth Circuit explained that "[i]f a habeas

petitioner believes a state court overlooked his claim, he should move for

reconsideration on those grounds. Otherwise, federal courts should treat it as

adjudicated." Here, Thomas did not seek reconsideration of the 6.500 Denial Order

on the basis that the state trial court had overlooked and/or misconstrued any of his claims. Thus, under *Rogers*, this Court must "treat" the 6.500 Denial Order – through its finding of "no error" – as having "adjudicated" the claims on the merits. *Id.*

Because the state trial court decided all of Thomas' remaining claims on the merits, they are subject to review under AEDPA.

### III

AEDPA requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Under AEDPA, "[i]f the state court lays out its reasoning," a federal court must "apply [a] holistic, deferential standard to the stated reasoning . . . as well as alternative reasoning that 'could have supported' the court's decision." *White v. Plappert*, 131 F.4th 465, 477 (6th Cir. 2025) (citation omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). As the Supreme

Court has explained, AEDPA requires "a habeas court [to] determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington*, 562 U.S. at 102.

## IV

The Court addresses each of Thomas' remaining claims separately below. As the Court explains, Thomas has failed to satisfy the requirements for relief under AEDPA with respect to any of the claims.

## A

The Court begins with Thomas' Due Process – Illusory Plea claim. In that claim, Thomas contends that his no contest plea violated the Due Process Clause of the Fourteenth Amendment because it conferred no benefit upon him. The Court concludes that he is not entitled to relief on this claim.

The first step in the Court's analysis of this claim under AEDPA "is to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs" this claim. *Marshall v. Rodgers*, 569 U.S. 58, 61 (2013) (quoting 28 U.S.C. § 2254(d)(1)). With respect to Thomas' Due Process – Illusory Plea claim, the governing rule is "that in order to satisfy the dictates of due process[,] a plea of guilty must be a voluntary, knowing, intelligent act." *Hart v.*

*Marion Corr. Inst.*, 927 F.2d 256, 257 (6th Cir. 1991) (citing *Brady v. United States,*

397 U.S. 742, 748 (1970)). The Supreme Court has never held that a defendant must

receive a benefit in exchange for a guilty plea. On the contrary, the Supreme Court

explained in *Brady* that defendants may enter a valid guilty plea for any number of

reasons that do not involve the receipt of a benefit from a plea agreement:

> The State to some degree encourages pleas of guilty at
> every important step in the criminal process. For some
> people, their breach of a State's law is alone sufficient
> reason for surrendering themselves and accepting
> punishment. For others, apprehension and charge, both
> threatening acts by the Government, jar them into
> admitting their guilt. In still other cases, the post-
> indictment accumulation of evidence may convince the
> defendant and his counsel that a trial is not worth the
> agony and expense to the defendant and his family. All
> these pleas of guilty are valid in spite of the State's
> responsibility for some of the factors motivating the
> pleas[.]

*Brady*, 397 U.S. at 750.

The Supreme Court has held, however, that when a guilty plea is entered

pursuant to a plea agreement that includes a promise or agreement by the prosecuting

attorney, due process requires that that promise or agreement be "fulfilled."

*Santobello v. New York*, 404 U.S. 257, 262 (1971). Lower courts applying

*Santobello* have held that a plea agreement that provides no true benefit to the

defendant is an unconscionable contract and unenforceable. *See e.g., United States*

*v. Randolph*, 230 F.3d 243, 249–50 (6th Cir. 2000). Here, Thomas contends that

his no contest plea violated his due process rights under the *Santobello/Randolph* line of cases because he entered the plea pursuant to a plea agreement that provided him with no benefit at all.

Thomas is not entitled to relief on this claim because the state courts reasonably could have concluded that Thomas did not enter his no contest plea under an agreement with the prosecution and, thus, that the illusory plea line of cases did not apply.[8]  Before explaining why that conclusion by the state courts could have been reasonable, the Court must first acknowledge that some pre-printed, boilerplate portions of the Plea Form signed by Thomas at the time he entered his plea, when read in isolation, could be indicative of an agreement between Thomas and the prosecution.  For example, the pre-printed title of the Plea Form was "Pretrial Settlement Offer and Notice of Acceptance." (Plea Form, ECF No. 26-2, PageID.883.)  Another pre-printed section of the Plea Form provided that Thomas "accept[ed] the above pretrial settlement offer." (*Id.*)  And the parties checked the box on the Plea Form indicating that the prosecutor would be withdrawing the sentence enhancement that had been filed against Thomas. (*See id.*)

However, when the substance of the Plea Form is read as a whole and considered in conjunction with the contemporaneous statements of the prosecution

---

[8] Counsel for Thomas conceded at oral argument before this Court that if Thomas did not plead no contest pursuant to an agreement that "it would take it out of the illusory plea cases." (03/23/2022 Hr'g Tr., ECF No. 25, PageID.802.)

during the plea colloquy, the state courts could reasonably have concluded that there was not an agreement between Thomas and the prosecution with respect to the plea. Indeed, several portions of the Plea Form suggest that the parties did not have an agreement.  For instance, the box for "[n]o charge reduction" was marked with an "X," and the boxes for "Sentence Agreement," "Agree to Guideline Sentence," and "Sentence Recommendation," were all left blank. (*Id.*)  And the prosecutor explained to the state trial court that while the box indicating the sentence enhancement would be withdrawn was marked with an "X," the enhancement was not being withdrawn pursuant to an agreement. (*See* 9/16/2014 Tr., ECF No. 8-4, PageID.292.)  Finally, the parties did not make any statements on the record that conclusively indicated that Thomas was pleading no contest pursuant to an agreement.  Under all of these circumstances, the state courts could reasonably have concluded that Thomas did not plead no contest pursuant to an agreement and that, accordingly, his plea satisfied the Due Process Clause even if, as Thomas claimed, it provided him no benefit.

Thomas counters that one statement by the prosecutor during the plea hearing does clearly show that he entered his plea pursuant to an agreement.  Thomas focuses on the exact words used by the prosecutor when the prosecutor addressed the box on the Plea Form indicating that the sentence enhancement would be withdrawn.  The prosecutor said that the withdrawal "was not part of the agreement." (*Id.*, PageID.292.)  Thomas says that this statement by the prosecutor "impl[ies] there

32

was an agreement." (Pet'r Supp. Br., ECF No. 17, PageID.694.)   Thomas' interpretation of the prosecutor's statement is not unreasonable.  But given that there is (1) other evidence from the record of the plea hearing that does not conclusively show that Thomas entered his plea under an agreement and (2) some evidence in the record that suggests that he did not plead pursuant to an agreement, the state courts could reasonably have concluded that the prosecutor's statement was not sufficient to establish that Thomas entered his plea under an agreement.  For that reason, Thomas is not entitled to relief on his Due Process – Illusory Plea claim.

## B

The Court next turns to the Due Process – Sentencing Exposure claim.  In that claim, Thomas contends that his plea did not comply with the Due Process Clause because he did not understand "what the mandatory [sentencing] Guidelines range would be after a [no contest] plea." (Pet'r Supp. Br., ECF No. 28, PageID.890.)   As support for this claim, Thomas cites a footnote from *Boykin v. Alabama*, 395 U.S. 238, 244 n.7 (1969), in which the Supreme Court said that a trial court, when taking a plea, is "best advised" to determine that the defendant understands, among other things, "the permissible range of sentences."  The state courts could reasonably have denied relief on this claim for at least two reasons.

First, the record does not contain any direct evidence that Thomas did not understand his possible guidelines range at the time he entered his plea.  While

Thomas has submitted an affidavit saying that at the time of his plea, he was not aware that his plea would waive his right to appeal non-jurisdictional errors, the affidavit does not say anything about confusion or lack of knowledge with respect to the sentencing guidelines. (*See* Thomas Aff., ECF No. 8-11, PageID.398.)  In fact, Thomas has never submitted a sworn statement of any kind attesting to any lack of knowledge concerning his sentencing exposure.

Second, Thomas was advised of the maximum sentence under the statute of conviction, and the state courts could reasonably have concluded that that advice satisfied *Boykin*.  As the Sixth Circuit has explained, "[w]hile a defendant need not know all the possible consequences of his plea . . . he must be aware of the maximum sentence to which he is exposed." *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009).[9]  Here, during Thomas' plea hearing, the state trial court told him that he faced up to life in prison. (*See* 9/16/2014 Tr., ECF No. 8-4, PageID.286.)  And the Plea Form that Thomas signed when he entered his plea also stated that he faced a maximum possible penalty of life imprisonment. (*See* Plea Form, ECF No. 26-2, PageID.883.)  The state courts could reasonably have concluded that that was enough.  Notably, Thomas has not cited any Supreme Court decision that required the state trial court – after having advised Thomas that he faced a sentence of life in

---

[9] *See also King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *United States v. Brown*, 391 F. App'x 524, 528 (6th Cir. 2010).

prison – to further advise Thomas about his guidelines range before accepting his plea.  For all of these reasons, the state courts could reasonably have rejected Thomas' claim that his plea was invalid on the basis that he did not understand his sentencing exposure.

Thomas counters that the record does show his lack of understanding.  He says that "[t]he record shows that [he] reasonably believed that his no-contest plea would limit his sentence range to 8-25 years with guidelines at either 96-240 months or 120-300 months." (Pet'r Supp. Br., ECF No. 17, PageID.727.)  But the portion of the record Thomas cites is not the plea hearing; instead, he cites to a pre-trial conference at which the prosecutor made a plea offer (that Thomas rejected) and then presented his estimate of the possible post-trial guidelines ranges.  None of those terms were discussed during the plea hearing.  Moreover, as noted above, during the plea hearing, Thomas was advised that he faced a life sentence and signed the Plea Form attesting that he had not been promised anything with respect to sentencing other than what had been placed on the record.  Nothing at the plea hearing suggested that the plea was being entered pursuant to the prosecutor's offer at the prior hearing.  Finally (and perhaps most importantly), Thomas has never actually submitted any *evidence* – such as an affidavit or other sworn statement – indicating that when he entered his plea, he did so on the assumption that it was pursuant to any of the terms mentioned by the prosecutor at the prior hearing.  Under

all of these circumstances, the state courts could reasonably have concluded, contrary to Thomas' contention, that he did *not* believe that he was pleading under terms that would limit his sentencing range to eight to twenty-five years or limit his guidelines range.

## C

The Court now turns to Thomas' Ineffective Assistance – Illusory Plea claim. In this claim, Thomas contends that his trial counsel was ineffective for failing to advise him that his "plea agreement offer[ed] no benefit." (Pet'r Supp. Br., ECF No. 28, PageID.894.)  The Court concludes that the state courts could reasonably have rejected this claim.

The clearly established federal law governing this claim is found in *Strickland v. Washington*, 466 U.S. 668 (1984) and *Hill v. Lockhart*, 474 U.S. 52 (1985).  In *Strickland*, the Supreme Court "held that legal representation violates the Sixth Amendment if it falls 'below an objective standard of reasonableness,' as indicated by 'prevailing professional norms,' and the defendant suffers prejudice as a result." *Chaidez v. U.S.*, 568 U.S. 342, 348 (2013) (quoting *Strickland*, 466 U.S. at 687–88). In *Hill*, the Supreme Court "held that the *Strickland* standard extends generally to the plea process." *Id.* (describing *Hill*, 474 U.S. at 57).  The *Strickland* standard is "deferential," and a criminal defendant claiming ineffective assistance of counsel

must clear a "high bar" to satisfy that standard. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Where, as here, claims of ineffective assistance of counsel have been adjudicated on the merits by a state court, those claims are subject to two layers of deference – the deference required under both *Strickland* and AEDPA. *See, e.g., Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (describing *Strickland* standard in context of habeas petition).   Indeed, the "standard" for ineffective assistance claims "is even more difficult to meet in habeas cases, where the review that applies to *Strickland* claims is 'doubly deferential.'" *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).   "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).   *See also Harrington*, 562 U.S at 105 (explaining that "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . more difficult" in the habeas context because when the "standards created by *Strickland* and § 2254(d)" "apply in tandem, review is 'doubly'" deferential (quoting *Knowles*, 556 U.S. at 123)).

There are at least three bases on which the state courts could reasonably have denied relief on the Ineffective Assistance – Illusory Plea claim.   First, for all of the

reasons explained above (*see supra* Section (IV)(A)), the state courts could reasonably have rejected one of the factual assumptions on which this claim was based – namely, that Thomas entered his plea pursuant to a plea agreement. The state courts then reasonably could have concluded that since Thomas did not enter his plea under a plea agreement, any alleged failure by counsel to explain the purported lack of benefit from a plea agreement would not have been deficient performance.

Second, the state courts could reasonably have concluded that Thomas did not show that his trial counsel, in fact, failed to properly advise him about the claimed lack of benefit in pleading no contest. Notably, Thomas did not present the state trial court with any direct evidence that his trial counsel failed to do so. For instance, he did not say in his affidavit that he presented to the state trial court that his trial counsel failed to advise him about the purported lack of benefit in pleading no contest. And the state courts reasonably could have concluded that Thomas' omission of such a claim from his affidavit was significant because Thomas took care to mention in that affidavit other important advice that his trial counsel allegedly failed to provide. (*See* Thomas Aff. at ¶ 3, ECF No. 8-11, PageID.398.). Simply put, it would not have been unreasonable for the state courts to have rejected the Ineffective Assistance – Illusory Plea claim on the basis that Thomas failed to identify sufficient evidence that affirmatively demonstrated his trial counsel's failure

to properly advise him about the claimed lack of benefit in entering his plea. *See Burt v. Titlow*, 571 U. S. 12, 23 (2013) ("[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.") (cleaned up).

Finally, the state courts could reasonably have rejected another premise of the Ineffective Assistance – Illusory Plea claim: namely, that Thomas' plea offered him no benefit.  It would not have been unreasonable for the state courts to have concluded that the plea benefitted Thomas by allowing his trial counsel to argue at sentencing that the state trial court should impose a lower sentence because Thomas spared the victim the hardship of testifying in open court and being subjected to cross-examination about a traumatic event.  That argument may have been what persuaded the state trial court to impose a sentence below the top of Thomas' guidelines even though the victim and prosecutor requested a sentence at the top of the guidelines.  But even if that argument did not end up having much impact on the ultimate sentencing decision, the state courts could reasonably have determined that the ability to make the argument, standing alone, was a benefit of his plea.

For all of these reasons, and under the especially deferential standard of review that applies here, the Court cannot conclude that the state courts unreasonably rejected Thomas' Ineffective Assistance – Illusory Plea claim.

**D**

The Court next addresses the Ineffective Assistance – Sentencing Range claim.  In this claim, Thomas contends that his trial counsel performed deficiently when counsel failed to "advise him that his *nolo contendere* plea would result in a mandatory guidelines range that was *above* what the prosecutor stated he would seek after trial." (Pet'r Supp. Br., ECF No. 28, PageID.895; emphasis in original.) Thomas has failed to show that the state courts unreasonably rejected this claim.  As with the Ineffective Assistance – Illusory Plea claim, the state courts could reasonably have determined that Thomas failed to present sufficient evidence that his trial counsel did not provide the advice at issue.  It would have been reasonable for the state courts to reach that conclusion for at least two reasons.

First, Thomas did not say in his affidavit that his trial counsel failed to give him proper advice about his sentencing exposure.  For the reasons explained above, the state courts could have found that omission to be significant.

Second, the state courts could reasonably have found the claim to be inconsistent with Thomas' statements and conduct at his sentencing hearing.  At that proceeding, the state trial court confirmed that Thomas had reviewed the guidelines calculation with his trial counsel and that counsel was satisfied that the calculations (after a few tweaks that were placed on the record) were correct. (*See* 10/14/2014 Tr., ECF 8-6, PageID.305-308.)  The state trial court then directly asked Thomas

40

whether he (Thomas) had had an opportunity to review the guidelines calculations with his trial counsel and whether he wished to make any "additions, corrections, deletions, factual changes" to the guidelines scoring. (*Id.*, PageID.308.) Thomas replied "no." (*Id.*)  It would have been reasonable for the state courts to have concluded that if, as Thomas now claims, the final guidelines calculations differed sharply from what he had been told by his trial counsel, he would have said something to that effect at sentencing.

For these reasons, the state courts reasonably could have denied relief on Thomas' Ineffective Assistance – Sentencing Exposure claim on the basis that the claim was not supported by sufficient evidence to overcome the presumption that his trial counsel provided sufficient performance.

## E

The Court now turns to the Ineffective Assistance – Appellate Waiver Claim. As noted above, in this claim, Thomas contends that his trial counsel rendered deficient performance when counsel failed to advise Thomas that his no contest plea waived his (Thomas') right to raise non-jurisdictional defects in the proceedings on appeal.  And he argues that he is entitled to habeas relief on this claim because the state courts unreasonably applied *Strickland* in rejecting the claim.  But it is not clearly established that the *Strickland* standard – or the Sixth Amendment's guarantee of effective assistance of counsel – applies to the alleged failure of

Thomas' trial counsel to advise Thomas that his no contest plea would waive his right to appeal non-jurisdictional defects in the proceedings.  Thus, the state court's rejection of Thomas' Ineffective Assistance – Appellate Waiver claim, even if erroneous, was not an unreasonable application of clearly established federal law. The Court is therefore compelled to deny to habeas relief on this claim.

In order to understand why it is not clearly established that the Sixth Amendment and *Strickland* apply to the failure of Thomas' trial counsel to tell Thomas that his plea would waive his right to appeal non-jurisdictional defects, it is first necessary to trace *Strickland's* history and development.  The Supreme Court decided *Strickland* in 1984.  As noted above, the following year, in *Hill*, the Supreme Court extended the *Strickland* standard "generally to the plea process." *Chaidez*, 568 U.S. at 349.  But the Supreme Court in *Hill* "explicitly left open" the question of whether "advice about a matter deemed collateral violates the Sixth Amendment." *Id.* at 349–50.  *Hill* thus "left the state and lower federal courts to deal with the issue; and they almost unanimously concluded that the Sixth Amendment does not require attorneys to inform their clients of a conviction's collateral consequences[.]" *Id.* at 350.  Indeed, "[a]ll 10 federal appellate courts to consider the question decided, in the words of one, that 'counsel's failure to inform a defendant of the collateral consequences of a guilty plea is never' a violation of the Sixth Amendment." *Id.* (quoting *Santos-Sanchez v. United States*, 548 F.3d 327, 334 (5th Cir. 2008)).

The Supreme Court returned to the question of whether the Sixth Amendment requires a defense attorney to advise his client about the collateral consequences of a plea in *Padilla v. Kentucky*, 559 U.S. 356 (2010). *Padilla* involved a failure of a defense attorney to inform his client, a non-citizen, that her guilty plea would result in her mandatory removal from the country. *See id.* The defendant, Padilla, argued that that failure was deficient performance under *Strickland* and that she was therefore deprived of the effective assistance of counsel guaranteed by the Sixth Amendment. *See id.* Before the case reached the Supreme Court, "[t]he Supreme Court of Kentucky [had] rejected Padilla's ineffectiveness claim on the ground that the advice he sought about the risk of deportation concerned only collateral matters, *i.e.,* those matters not within the sentencing authority of the state trial court." *Padilla,* 559 U.S. at 364.

The Supreme Court's "first order of business" in *Padilla* was "to consider whether the widely accepted distinction between direct and collateral consequences categorically foreclosed Padilla's claim, whatever the level of his attorney's performance." *Chaidez*, 568 U.S. at 355. Critically, the Supreme Court chose not to offer a comprehensive answer to that question. On the contrary, the Court concluded that "[w]hether [the direct versus collateral consequences] distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation." *Padilla*, 559 U.S. at 365. "The holding in *Padilla* was [thus] limited

to advice 'concerning the specific risk of deportation[.]'" *Parrino v. United States*,

655 F. App'x 399, 403 (6th Cir. 2016) (quoting *Padilla*, 559 U.S. at 366).  Therefore,

after *Padilla*, it is not clearly established that the Sixth Amendment and *Strickland*

apply to an attorney's lack of advice about collateral consequences.  *See*, *e.g.*,

*Romero v. Gipson*, No. 11-cv-01571, 2014 WL 2002298, at *12–13 (E.D. Cal. May

15, 2014) (holding that "there is no clearly established federal law within the

meaning of § 2254(d)(1) that requires counsel" to provide advice about a "matter

that is within the category of collateral consequences of a no-contest plea"); *Miller

v. LeClair*, No. 20-cv-1546, 2024 WL 1797341, at *14 (E.D.N.Y. Apr. 25, 2024)

(explaining that "the Supreme Court has not yet announced the failure to advise a

defendant of non-immigration collateral consequences of a conviction constitutes

ineffective assistance of counsel").[10]

---

[10] Moreover, after *Padilla*, some lower federal courts have continued to hold that the Sixth Amendment does not require a criminal defense attorney to advise his client about collateral consequences of a conviction other than deportation. *See*, *e.g.*, *Sims v. United States*, 785 F. App'x 632, 634 (11th Cir. 2019) ("An attorney's failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation.") (citing *Chaidez*, 568 U.S. at 356); *Bell v. United States*, Nos. 12-CR-88, 15-CV-193, 2016 WL 7315326, at *13 (E.D. Tenn. Dec. 14, 2016) (*Padilla* is "not importable" in the scenarios involving collateral consequences other than deportation); *Kim v. Dir., Virginia Dep't of Corrs.*, 103 F.Supp.3d 749, 758 (E.D. Va. 2015) (noting that it is not clearly established under *Padilla* and *Strickland* that counsel is required to advise defendant about possible civil commitment as a consequence of a guilty plea).

There is also no clearly established rule for determining whether a criminal defendant's waiver of his right to appeal non-jurisdictional defects is a direct or collateral consequence of his no-contest plea. Indeed, it is "far from clear exactly where the line between direct and collateral consequences falls." Jenny Roberts, *The Mythical Divide Between Collateral and Direct Consequences of Criminal Convictions: Involuntary Commitment of "Sexually Violent Predators,"* 93 Minn. L. Rev. 670, 680 (2008). The Supreme Court has never established a test for distinguishing between the two types of consequences, and the tests adopted by the lower federal and state courts have varied – at times widely. *See id*. at 678–91. Simply put, clearly established federal law does not foreclose the conclusion that a defendant's waiver of his right to appeal non-jurisdictional defects is a collateral, rather than direct, consequence of his no-contest plea.[11]

---

[11] In fact, the weight of authority seems to suggest that a waiver of the right to appeal non-jurisdictional defects *is* a collateral consequence of a no-contest plea. The "most widely cited" test provides that "[t]he distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate[,] and largely automatic effect on the range of the defendant's punishment." Roberts, *supra*, at 689; *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir. 1973). In line with that test, many federal appellate courts have limited "direct" consequences to those that have an immediate impact on the *punishment* that a defendant faces as a result of his conviction. *See, e.g., United States v. Salmon*, 944 F.2d 1106, 1130 (3d Cir. 1991) ("The only consequences considered direct are the maximum prison term and fine for the offense charged."), abrogated in part on other grounds, *United States v. Caraballo-Rodriguez*, 726 F.3d 418 (3d Cir. 2013); *Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004) ("The distinction between direct and collateral consequences of a plea turns on whether the consequence represents a definite, immediate, and largely

Putting this all together, it would not have been a violation of clearly established federal law for the state courts to have concluded that Thomas' waiver of his right to appeal non-jurisdictional defects was a collateral consequence of his no-contest plea and that the Sixth Amendment therefore did not obligate Thomas' trial counsel to inform him (Thomas) of that consequence before Thomas entered his plea. For that reason, AEDPA requires the Court to deny habeas relief on the Ineffective Assistance – Appeal Waiver claim.

## F

While the Court has determined that AEDPA mandates the denial of relief on the Ineffective Assistance – Appellate Waiver claim, the Court feels compelled to observe, as the Sixth Circuit did during the prior appeal in this case, that the arguments underlying the claim "would warrant serious consideration on *de novo* review." *Thomas v. Burt*, No. 22-1802, 2023 WL 5447379, at *10 (6th Cir. Aug. 24, 2023). Indeed, it is quite possible, if not likely, that Thomas would be entitled to relief on the claim under *de novo* review.

The substantial deficiency in the performance of Thomas' trial counsel is clear: counsel failed to tell Thomas that his plea would waive his right to appeal non-

---

automatic effect on the range of a defendant's punishment." (internal quotation marks omitted)). Since the right to appeal non-jurisdictional defects is not a part of a defendant's sentence, the waiver of that right would not appear to be a direct consequence of a plea under this test.

jurisdictional defects even though Thomas had made clear that he was interested in pursuing such an appeal and that he was proceeding on the assumption that he could do so. *See State v. Collins*, 185 N.E.3d 146, 149–50 (Ohio Ct. App. 2022) (holding that counsel provided deficient performance by failing to advise defendant who wished to appeal denial of motion to suppress that pleading guilty would waive his right to do so). It cannot be reasonable for an attorney to permit his client to enter a plea based upon the client's expressed misunderstanding of the law, as Thomas' attorney did here. Simply put, "[g]iven the gravity of a defendant's decision whether to accept a plea offer or proceed to trial . . . counsel has an obligation to address a material misunderstanding of law, expressed by the client, that appears to influence the client's decision whether to accept a plea offer or to proceed to trial. This obligation is wholly consistent with counsel's obligation to ensure defendants have the specific information necessary *for them* to make an informed decision." *Moore v. Commissioner of Correction*, 258 A.3d 40, 50 (Conn. 2021) (emphasis in original) (citing *Purdy v. United States*, 208 F.3d 41, 44–45 (2d Cir. 2000)).

And it does appear that counsel's deficient performance prejudiced Thomas. In order to show prejudice in this context – where "a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea" – Thomas must demonstrate a "'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"

*Lee v. United States*, 582 U.S. 357, 364–65 (2017) (quoting *Hill*, 474 U.S. at 59)). But he does not have to show that he "would have been better off going to trial" nor even that he had a "viable defense" at trial. *Id.* at 365–66.  Instead, he must show only a reasonable probability that given the particular focus of *his* "decisionmaking," he would not have accepted a plea if his attorney had properly advised him. *Id.* at 367.

Thomas has likely made that showing here.  The record suggests that Thomas must have determined that he could not prevail at trial in light of his co-defendant's last-minute decision to cooperate and that his sole viable path forward was to challenge the trial court's adverse pre-trial rulings on appeal.  Simply put, it seems that the one avenue that Thomas intended to keep open was a possible appeal of the trial court's adverse rulings, and it seems clear that he would not have entered his plea if he understood that doing so would waive his right to appeal those rulings. Indeed, the most reasonable inference from the record seems to be that if Thomas understood that entering his plea would waive his right to appeal, then he would have gone to trial and risked a conviction in order to preserve his opportunity to present his claims on appeal.[12]  Under these circumstances, Thomas has likely shown

---

[12] One fact that arguably cuts against the conclusion that Thomas suffered prejudice is that Thomas entered his plea even though he was told that doing so waived his right to take an appeal as of right and left him with only the option of filing an application for leave to appeal – which the Michigan Court of Appeals had the discretion to deny.  Thomas' decision to enter a plea under these circumstances could

that his trial counsel's failure to advise him that he could not appeal non-jurisdictional defects caused him prejudice. *See id.* at 364–70 (holding that defendant, who faced long odds at trial, and who entered guilty plea, showed prejudice from counsel's deficient failure to advise him that he would be deported upon conviction where he established that avoiding deportation was his primary consideration in choosing whether to enter plea or go to trial).[13]

For all of these reasons, Thomas' Ineffective Assistance – Appellate Waiver claim would have had real merit on *de novo* review, and Thomas may well have been entitled to relief on the claim under that standard.

## V

Finally, the Court tuns to Thomas' request for an evidentiary hearing. (*See* Pet'r Supp. Br., ECF No. 17, PageID.740-741; Letters, ECF Nos. 47, 48.)  Thomas says that he is entitled to such a hearing because the state courts never adjudicated

_____

arguably suggest that retaining his ability to appeal was not truly essential to him. But for all of the reasons explained above, the most reasonable inference from the record is that Thomas would not have pleaded guilty if he understood that he was giving up any right he had to even attempt to appeal the state trial court's rulings.

[13] To the extent that the direct versus collateral consequences divide controls, the Court would conclude that Thomas' waiver of his right to appeal non-jurisdictional defects was a direct consequence of which his attorney was required to advise him. The waiver was an immediate and direct consequence of Thomas' plea, and the waiver had effect *in the criminal proceedings against Thomas* rather than in some other, collateral proceeding or matter.  The Court recognizes that direct consequences have often been linked to punishment, *see* note 11 *supra*, but the Court is not aware of any decision considering whether the waiver of the right to appeal non-jurisdictional defects is a direct or collateral consequence of a plea.

some of his claims on the merits. (*See* Pet'r Supp. Br., ECF No. 17, PageID.740-741.)  The Court disagrees.  As explained above, the Court concludes that the state courts *did* adjudicate all of Thomas' claims on the merits.  Thomas is therefore not entitled to an evidentiary hearing. *See*, *e.g.*, *Bourne v. Curtin*, 666 F.3d 411, 415 (6th Cir. 2012) (holding that habeas petitioner was "not entitled to an evidentiary hearing" where the state court "considered" petitioner's claim "on the merits").

## VI

For all of the reasons explained above, the Court concludes that Thomas is not entitled to relief on any of the remaining claims raised in his petition.  Accordingly, the petition (ECF No. 1) is **DENIED**.

Before Thomas may appeal the Court's decision, he must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists

could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court concludes that Thomas has met these standards with respect to all of his remaining claims. At a minimum, reasonable jurists could disagree with the Court's conclusion that Thomas' claims are subject to review under AEDPA. Accordingly, the Court **GRANTS** Thomas a certificate of appealability with respect to all of those claims.

The Court also **GRANTS** Thomas leave to appeal *in forma pauperis* because an appeal could be taken in good faith. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  May 8, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 8, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
